### J. M. Farris v. The State.

No. 1455. Decided January 17, 1912.

Rehearing denied February 28, 1912.

**1.—Carrying Pistol—Charge of Court.**

Where, upon trial of unlawfully carrying a pistol, the court properly charged the law applicable to the facts, and the same was not contradictory as claimed by the defendant, there was no reversible error.

**2.—Same—Additional Charge—Statutes Construed.**

Where, upon trial of unlawfully carrying a pistol, the jury after retiring to consider their verdict, returned into court and inquired of the court whether defendant had a right to go out on the street with his pistol looking for the parties who had beat up his child, and the defendant agreed that the question could be answered orally, whereupon the court informed the jury that defendant had no right to do so, there was no reversible error. Article 754, Revised Criminal Statutes, Code Criminal Procedure.

**3.—Same—Sufficiency of the Evidence—Statutes Construed.**

Where, upon trial of unlawfully carrying a pistol, there was evidence pro and con that the pistol used was so broken or out of repair that it could not be fired, and this question was properly submitted to the jury, there was no error. Article 734, Revised Criminal Statutes, Code Criminal Procedure.

**4.—Same—Charge of Court—Intent.**

Where, upon trial of unlawfully carrying a pistol, the question of intent was not raised by the evidence, there was no error in the court's failure to charge thereon.

**5.—Same—Practice on Appeal.**

Where the court on appeal properly considered matters which were raised by bill of exceptions and motion for a new trial, but not by brief, and found no error, the judgment will be affirmed.

Appeal from the County Court of Ellis. Tried below before the Hon. J. C. Lumpkins.

Appeal from a conviction of unlawfully carrying a pistol; penalty, thirty days confinement in the county jail.

The opinion states the case.

No brief on file for appellant.

*C. E. Lane,* Assistant Attorney-General, for the State.

PRENDERGAST, JUDGE.—The appellant was convicted for unlawfully carrying a pistol and his penalty fixed at thirty days confinement in jail.

The testimony shows that late Sunday evening in the town of Palmer, Ellis County, Texas, the four-year-old child of the appellant threw a can of water on a boy sixteen or seventeen years of age, weighing about 120 or 130 pounds, while he was passing along the street. The child and the boy were both on the street; that the boy thereupon slapped the child down and kicked him; that this occurred about twenty steps from appellant's residence. Appellant was in the back room of his residence engaged at the time and knew nothing of the occurrence until afterwards. The child was helped to his home by an older brother. He was then crying and screaming and became sick. His mother fixed a pallet and placed him on it and he soon began vomiting, was pale and quivering. Appellant's wife then went into the room where he was and told him of the occurrence and the condition of the child. He at once went into the room where the child was and saw his condition. His wife testified that she also then told him that three men had been out, within about twenty feet of their house—one of them had a knife open in his hand and said to her, "Yes, we fixed your kid, and will do your old man the same way if he will come out." That the appellant thereupon got his loaded six-shooter, held it in his hand, went out on the street of the town inquiring and hunting for the person who had mistreated his child. Although there were some twenty-five or thirty persons out on the street at the time, no one seemed to know, or at least no one told him who had mistreated his child. The person who had done so was not there and had left before the appellant ever came out of his house. Appellant carried the pistol in his hand all the time on this occasion. After failing to find the person who had mistreated his child he went back into his residence with his pistol. When the deputy sheriff heard of the occurrence and that the appellant had been out on the streets with his pistol in his hand he went to the residence and business place of appellant and asked him if he had a pistol out there in that crowd on the streets, and he said that he had; that what he had done was not a violation of the law because he had the pistol openly and unconcealed in his hand. The deputy sheriff replied to him that it was a violation of the law. He did not at that time claim to the deputy sheriff or tell

him anything about the main spring of the pistol being broken. The deputy sheriff asked him nothing about it. He testified further that he did not know that the main spring of the pistol being broken was any defense to carrying a pistol; that he found that out for the first time when he employed an attorney on July 3.

In appellant's favor his fourteen-year-old son testified that he knew the pistol that his father took with him out on the streets on this occasion; that the main spring of it was broken at the time and had been ever since October or November, 1910; that it was broken while they lived at Ferris in the section-house; that there was a screw, in October or November, 1910, on the under side of the handle of the pistol which was sticking out some little distance and this screw would hurt the hand of the section hands when they twirled and snapped the pistol; that one of the section hands, a German, took a screwdriver and screwed the screw into the handle of the pistol until there was none of the screw protruding, and the next time he twirled and snapped it the main spring broke; that he, the witness, was present when this happened, but his father was not; that the pistol had never been mended since then.

Mrs. Farris, the wife of the appellant, also testified that the main spring of the pistol was broken and it had been broken since February of that year (the case was tried and she testified on July 7, 1911; the carrying of the pistol was charged on April 1, 1911). That it had never been fixed since it was broken and that she knew it was in the same condition at the time appellant was charged with carrying it as it had been when the main spring was first broken and that "the pistol can not be fired or shot." The appellant himself testified that he was not present when the main spring of the pistol was broken, but that he had never had it fixed since it was broken. That it was in the same condition at the time of the trial as it was when he carried it as charged. He testified that he knew the main spring was broken when he took it and went out there with it, and he could have used it as a club or bluff. He also testified that the pistol could not be fired at the time of the trial, nor when he carried it, nor at any time since the main spring was broken in October or November of the preceding year. A. L. Robinson, who was not related to the appellant, testified as to the condition of the pistol, the same as the appellant and his wife had testified, and that it would not shoot and could not be made to fire. The appellant also proved by two witnesses that his general reputation as an honest, law-abiding citizen was good.

The pistol was identified by all of the witnesses on the stand, was produced, introduced in evidence before the jury and inspected and handled by them.

The State introduced several witnesses who testified that they were present and saw appellant's child slapped and kicked; that there were some twenty-five or thirty people in the crowd about there at the

time; that when the appellant came out with the pistol he tried to find out who hurt the child and said he would shoot it out with them if they wanted to. Three witnesses for the State testified that while they were there they did not see three men in twenty feet of appellant's home, nor hear them say to Mrs. Farris what she testified, shown above. None of them undertook to say that such thing did not occur, but that while they were there they did not see or hear any such thing.

In the first part of the court's charge he correctly stated that the appellant was charged "with the offense of unlawfully carrying on and about his person a pistol," giving the time and place and that the appellant plead not guilty. In the second paragraph he correctly told the jury what the statute was as to unlawfully carrying a pistol and the punishment therefor. In the third paragraph he told them that if they believed from the evidence, beyond a reasonable doubt, that the appellant had on his person a pistol as charged, but if they should further believe that at the time he had reasonable grounds for fearing an unlawful attack upon his person and that the danger was so imminent and threatening as not to admit of the arrest of the person about to make such attack, upon legal process, then he would not be guilty and that the jury should so find. That it was for the jury to determine from the evidence whether the fear of an unlawful attack was reasonable, and whether the danger was so imminent and threatening as not to admit of the arrest of the party about to make such attack upon such legal process. In the fourth paragraph he tells the jury that if they believe from the evidence, beyond a reasonable doubt, that the appellant did at the time and place charged on premises not his own, *unlawfully* have on or about his person a pistol as charged, then he would be guilty and *to so* find him and fix his punishment. The fifth paragraph of the court's charge is as follows:

"You are further instructed that if a pistol is so broken or out of repair that it can not be used to shoot with or can not be fired, it is not a violation of the law to carry the same. Now, if you believe from the evidence that the defendant carried on or about his person the pistol as alleged in the information in this case, and you further believe that said pistol, at the time he is alleged to have carried the same, was so broken or out of repair that it could not be used for firing, or to shoot with, or if you have a reasonable doubt on this issue, you will acquit the defendant and say by your verdict not guilty."

In the sixth he charged that the defendant is presumed to be innocent until his guilt is established by legal evidence beyond a reasonable doubt, and if they have a reasonable doubt to acquit him. In the seventh he tells them they are the exclusive judges of the facts proven, the credibility of the witnesses and the weight to be given to the testimony.

Appellant contends that the third, fourth and fifth paragraphs of the court's charge are contradictory and that the fourth ought to have been qualified by stating that they should so convict him, unless they should acquit him on the paragraph charging imminent danger or on the paragraph regarding the broken main spring. While it might have been better for the court to have so qualified the fourth paragraph of his charge, when the whole is taken together, we think it could not have misled and did not mislead the jury. As we view the evidence it would have been unnecessary to have given the third subdivision of the charge, because the evidence does not show that anyone was about to attack the appellant. On the contrary, it indicates that he was doing the attacking, or attempting to do so. Besides, the effect of the third subdivision of the charge was that it would not be an unlawful carrying of the pistol if the defendant had reasonable grounds for fearing an unlawful attack and the danger was so imminent and threatening as not to admit of the arrest of the person, etc. Then the fourth subdivision tells them that if he *unlawfully* had on or about his person a pistol, etc. Then the fifth subdivision again tells them that if the pistol was so broken or out of repair that it could not be used to shoot or could not be fired, then it would not be an unlawful carrying and to acquit the appellant. We think there is no conflict between the charges, and that the jury could not have been misled as claimed by the appellant.

Appellant claims that the court committed reversible error in answering the inquiry of the jury in the way he did. The bill shows that after the jury had heard the evidence and charge they had been out deliberating upon their verdict two or three hours, then returned into court and announced that they could not agree, and through their foreman they asked the court this question: "If there was a disturbance down there and someone told defendant that his child had been beat up, would he have a right to get his gun and go down there?" The appellant at the time agreed that the question could be asked by the jury orally and answered by the court orally. In reply to the question the court told the jury: "He would not have a right to get his gun and go down there." Appellant's objection to this charge was that it stated no correct legal proposition, was a comment by the court on the weight of the evidence and invaded the province of the jury, was prejudicial and the question asked did not call for any proposition of law applicable to the facts of the case, and the court had already delivered to the jury a written charge on the question of defendant's right to bear arms when he had reasonable grounds to fear an attack made upon him and the answer of the court ignored all other defenses in the case, particularly the one with reference to the main spring of the pistol being broken.

We think the court did not err in giving this charge and that it was a correct answer and stated a legal proposition to the jury. As shown above the facts were that the mistreatment of appellant's

child had occurred some time before appellant went out on the streets with the pistol hunting the party who had assaulted his child, and if his child had been assaulted and beaten up the law does not delegate to the father of the child the right to avenge the wrong. Of course, if the assault was being committed upon the child and he had taken the pistol out to protect the child, or to stop the beating of it, he would have committed no wrong. But he did not do this. The assault had been committed some time before. The party who committed it had gone away, and the law, not the appellant, had the right to punish the party who committed the assault on his child and he had no right in law whatever to do so. Article 754 (new), Code Criminal Procedure expressly authorizes the jury, after they have retired to appear before the court and "ask further instructions touching any matter of law" and it is made the duty of the court to give such instruction to the jury, but "to restrict it to the particular point on which the question is asked." Taylor v. State, 42 Texas, 504; Post v. State, 10 Texas Crim. App., 598.

The most serious question in the case is whether or not the evidence so conclusively showed that the pistol was so broken or out of repair that it could not be used to shoot with or could not be fired as that the verdict can not stand.

The law, article 734 (new), Code Criminal Procedure, wisely provides that "the jury are the exclusive judges of the facts in every criminal cause." And it also wisely commits to them the credibility of the witnesses and the weight to be given to their testimony. They and the judge of the lower court see and hear the witnesses and their manner of testifying, are disinterested, entirely impartial and are in every way better prepared and qualified to judge of these matters than any upper court who merely has in writing the substance of the testimony detailed by the witnesses. In this case it is shown that the appellant some time after his child had been assaulted and after it was all over with seized his loaded six-shooter, went out of his house upon the streets of the town, going twenty-five or thirty steps from his residence into and upon the streets, inquiring for the party who had hurt his child and declaring "he would shoot it out with them if they wanted to" and later, when accosted by the deputy sheriff to the effect that he had violated the law in going out upon the streets with his pistol, he did not then claim that the pistol was out of fix or in any way broken so that he could not shoot it or it could not be fired, but on the contrary claimed that he had not violated the law because he had carried the pistol in his hand, his idea apparently being that it was not a violation of the law if he carried the pistol openly in his hand and not concealed about his person, and that he then said nothing about the pistol being out of fix and did not know until informed by his attorney a few days before the trial

that if the pistol was so broken that it could not be fired, he had not violated the law. It is true that his fourteen-year-old son, he, his wife, and a former employe of his, testified that the main spring of the pistol was broken and all of them except the son testified that it could not be fired, yet the pistol itself was identified by all the witnesses, produced before the jury and introduced in evidence to them and examined by them at the time. The pistol thus being produced and introduced in evidence, the jury by its examination could determine, and doubtless did determine that the pistol was not so broken as that it could not be fired, but on the contrary they came to the conclusion that it was in condition so that it could be fired and shot, and having so found, under a charge of the court specifically telling them "that if the pistol is so broken or out of repair that it can not be used to shoot with or can not be fired, it is not a violation of the law to carry same," and if the jury so believed or had a reasonable doubt that it was out of such repair to acquit the defendant. The evidence clearly establishes and the jury believed therefrom, as shown by their verdict, that the pistol was not so broken or out of repair that it could not be fired. This court in Smith v. State, 96 S. W. Rep., 1086, held in effect that it was no defense for carrying a broken pistol if it could be fired.

The question of intent to violate the law for carrying a pistol does not apply because the intention to violate the law is not made an element of the offense. (McCallister v. State, 55 Texas Crim. Rep., 392; Cordova v. State, 50 Texas Crim. Rep., 353.) The only cases where the question of good faith and intent of the appellant in a pistol case applies, as held by this court, is when he is an officer or honestly believes he is an officer and carries the pistol under such circumstances so believing, when it turns out that he is not, under the law, an officer. One of the principal objects of the Legislature in making it unlawful to carry a pistol was to prevent just what doubtless would or might have occurred if the appellant on this occasion had found the person who had assaulted his child. It is clear from the testimony that it was his intention in carrying his pistol out on the streets on this occasion to avenge the wrong to his child and to have shot or killed the party who had mistreated his child. This he had no right to do. As said by this court in the recent case of Morris v. State, not yet reported, "While we feel that the facts in this case (may) present a case for executive clemency, . . . yet the pardoning power is no more in our hands than it was in the hands of the jury who tried appellant, and he, having violated the law . . . we feel that we can not disturb the verdict of the jury."

There are other questions raised in the record by appellant's motion for new trial, some bills of exceptions to the refusal of the court to give some of his special charges, none of which are presented

by appellant in his brief. However, we have considered all of these matters and none of them present reversible error.

The judgment will, therefore, be affirmed.

*Affirmed.*

[Rehearing denied February 28, 1912.—Reporter.]