James Dennis TATOM, Appellant,

v.

The STATE of Texas, Appellee.

No. 53718.

Court of Criminal Appeals of Texas.

Sept. 14, 1977.

---

Herbert Green, Jr., Dallas, for appellant.

Henry Wade, Dist. Atty., Sue Lagarde and Andy Anderson, Asst. Dist. Attys., Dallas, Jim D. Vollers, State's Atty., David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

DOUGLAS, Judge.

This is an appeal from a conviction for unlawfully carrying a club. The court assessed punishment at a fine of $200.00 and thirty days in jail, probated.

On October 2, 1974, Dallas police officers Anthony Risner and D. L. Whitfield stopped a van that was speeding. Appellant was the driver and his brother, Anthony Tatom, was a passenger. As the officers approached they observed a pair of "nun-chucks" between the seats on the engine cover. A nun-chuck consists of two sticks which are connected by chain or cord. They are used by those trained in the discipline of karate. The brothers were arrested for unlawfully carrying a weapon.

■ Appellant contends that a nun-chuck is not a club as that term is defined in V.T.C.A., Penal Code, Section 46.01(1). That Section provides:

"'Club' means an instrument that is specifically designed, made, or adapted for the purpose of inflicting serious bodily injury or death by striking a person with the instrument, and includes but is not limited to the following:

"(A) blackjack;

"(B) nightstick;

"(C) mace;

"(D) tomahawk."

V.T.C.A., Penal Code, Section 46.02(a), provides, in part:

"A person commits an offense if he intentionally, knowingly or recklessly carries on or about his person a . . . club."

Anthony Risner was an experienced officer. He testified that the nun-chucks were commonly used as a club.

Anthony Tatom testified that he had studied the historical development of nun-chucks. He related that the ancient Orientals originally utilized a form of that instrument as a farm tool, but later began using it to defend themselves from attack. Eventually it came to be used solely as a weapon by those trained in the martial arts.

Tatom described a nun-chuck as "two pieces of round wood like that with a piece of rope or chain that connects them." But he denied that it was used as a club.

He further testified as follows:

"Q. Based upon your knowledge of nun-chucks, in your opinion, are nun-chucks, be they a club or whatever you wish to describe them as, would you define it as an instrument that is specially designed, made, or adapted for the purpose of inflicting serious bodily injury or death by striking a person with the instruments?

"A. It's according to who has them.

"Q. It's according to who has them like a gun that is used by somebody who knows what and how to shoot and aim at a person and kill a person, but a nun-chuck in the hands of someone unschooled and what what is it, karate?

"A. Yes, sir.

"Q. A person unschooled in karate such as myself, for instance, I couldn't do much with them, just whip them around?

"A. You probably couldn't whip them around without hurting yourself.

"Q. Probably hit me on the head?

"A. And you could hurt yourself with them.

"Q. Let me ask you this, Mr. Tatom: In the hands of an experienced individ-

ual, one experienced in the martial arts, could the nun-chucks be used by a skilled person to inflict serious bodily injury or death?

"A. If you—yes, I guess like a black belt or something like that.

"Q. But, it takes training to do it?

"A. Yes, sir, like I was at that time, I was interested in karate and stuff like that and I found a few black belts that said they don't even let anybody touch or even train with nun-chucks until we—they are well into their training.

"Q. Okay.

"A. They said they are too dangerous— you know, for yourself to be trying to do anything and you have to be a very good trained person.

" * * *

"Q. Actually, these are really—these are really just two sticks tied together with some rope?

"A. Actually—

"Q. In other words, these are not real nun-chucks, are they?

"A. No.

" * * *

"Q. I mean, in other words, you can't use these nun-chucks to strike or touch anything with, can you?

"A. No.

" * * *

"Q. You would say these are sticks just tied together with rope for practicing?

"A. Yes, sir. Those aren't the right size to be a weapon.

" * * *

"Q. Anthony, you wouldn't want anybody to whack you over the head with those, would you?

"A. No, sir."

The pair of nun-chucks in question are in the record. One of the alleged weapons consists of two pieces of laminated wood. Each piece is over eleven inches long and is an inch in diameter. Holes have been drilled in the center of an end of each piece and at an inch below. The rope connecting the two pieces of wood is threaded through the four holes and knots are tied on the side of each piece. There is three inches of rope between the ends of each piece of wood. Observing them, we hold that the trial judge had before him sufficient evidence to conclude that they were designed for the purpose of inflicting serious bodily injury or death upon a person by striking him. Whether the weapon was used solely for karate practice or not, or whether it was used solely for defensive purposes, the evidence sufficiently demonstrated that it was a club as defined in the statute.

Appellant's other contention is that the evidence was insufficient to show that he intentionally and knowingly carried on or about his person a club. Under the former statute, Article 483, V.A.P.C. (1925), Unlawfully Carrying Arms, the intention of the accused was immaterial since the statute did not make intent an element of the offense. *Farris v. State,* 64 Tex.Cr.R. 524, 144 S.W. 249 (1912). See also *Lewis v. State,* 84 Tex.Cr.R. 499, 208 S.W. 516 (1919). This is no longer true under the Penal Code of 1974.

Section 46.02, supra, requires proof that the accused intentionally, knowingly or recklessly carried on or about his person an unlawful weapon. We must consider whether the evidence in the instant case was sufficient to show the requisite intent.

Officer Risner testified that the weapon was on or about appellant's person when he was arrested. According to both Risner and Anthony Tatom, it was in open view on the engine cover between appellant and his brother. Anthony further testified that he owned the weapon and that appellant was not aware that it was in the vehicle until they were stopped.

■ The court may accept or reject any part or all of the witnesses' testimony. On appeal, we must view the evidence in the light most favorable to the State. We conclude that that evidence was sufficient for the trial court to conclude that appellant intentionally and knowingly carried on or about his person a club.

The judgment is affirmed.