**Richard Lewis TOLEDO, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–81–118–CR.**

Court of Appeals of Texas,
Fort Worth.

May 4, 1983.

Roger D. Shipman, Vick & Reese and Phillip O. Vick, Denton, for appellant.

Jerry Cobb, Dist. Atty., Denton, for State.

Before FENDER, C.J., and ASHWORTH and SPURLOCK, JJ.

OPINION

ASHWORTH, Justice.

An opinion has previously been rendered by this court in this case. *Toledo v. State,* 631 S.W.2d 824 (Tex.App.—Fort Worth 1982). After such opinion was rendered, it was brought to this court's attention that the attorney appointed to represent appellant had been permitted by the trial court to withdraw on February 22, 1982, after the State's brief had been filed. The case was submitted to this court on briefs on April 7, 1982, and an opinion affirming conviction was rendered on April 14, 1982. The Honorable Phillip O. Vick was subsequently appointed to represent appellant and brought to this court's attention the fact that appellant had no attorney representing him when the appeal was submitted, and requested a rehearing. A rehearing was granted for the reason stated, as well as for the reason that the original opinion was premised on the conviction of rape of M.K., when in fact the conviction was for the rape of J.K., the mother of M.K. For these reasons, the opinion formerly rendered, *Toledo v. State,* 631 S.W.2d 824 (Tex.App.—Fort Worth 1982) is withdrawn and this opinion is now rendered and substituted for the same.

Richard Lewis Toledo was convicted of aggravated rape and his punishment was set at confinement in the Texas Department of Corrections for a term of twenty-seven years.

Judgment affirmed.

Toledo presents two grounds of error: (1) There was insufficient evidence of aggravated rape; (2) a weapon unconnected with appellant or the crime was admitted into evidence. These grounds of error require that we review the evidence to some extent.

A young lady, M.K., left a night club in Denton, Texas, at about 2:00 A.M. and went to her car. Toledo forced his way into her car and raped her. He then wanted to continue the attack in another location. M.K. told him she lived alone in an apartment and they could go there. In fact, M.K. lived in an apartment with her mother, J.K., and a younger sister. M.K. suggested going to her apartment to get protection from her mother, who kept a gun in the apartment.

Upon arrival at the apartment, Toledo produced a pair of nunchakus, two sticks of wood joined together by a rope, from between his coat and shirt, and held them in his hand. The daughter testified that she was afraid of them being used on her as she had seen them used on television and knew they could produce serious injury. Upon entering the apartment, the prosecutrix was asleep in bed with another daughter who was seven years old. Toledo was angry on finding the apartment occupied and said, "Now, you are both going to get it." He had the nunchakus in his hand, and the prosecutrix testified that she had seen them used on television, and knew they could cause injury and was afraid of them. The mother begged that the younger daughter not be forced to witness, and Toledo took the young girl into the bathroom. While he was doing this, the other daughter and mother discussed getting the mother's gun, but did not because it was not loaded.

Toledo had the two women perform oral sex on each other. He then produced a condom and placed it on one of the sticks comprising the nunchakus. He forced the mother to masturbate with this while he raped the daughter. Then the procedure was reversed and the daughter was forced to masturbate in the same fashion while he raped the mother. Then he forced the daughter to perform oral sex on him. He then used their pantyhose to tie their hands behind their backs and left. The women were able to get the younger daughter to cut them loose, and then called the police.

■ Toledo's first ground of error is that there is insufficient evidence to support a conviction of aggravated rape of the mother. The mother testified she knew the nunchakus could produce injury, that she sub-

mitted to Toledo because she was afraid of death in view of his threatening manner and the presence of the nunchakus. She testified she thought of attempting to hit Toledo with them while he was raping her daughter, but did not do so because of fear of death in the event she was unsuccessful. In *Tatom v. State,* 555 S.W.2d 459 (Tex.Cr. App.1977), it was held that "nunchakus" is a "club" and a prohibited weapon designed for the purpose of inflicting serious bodily injury or death upon a person by striking him. A "deadly weapon" is anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or anything that in the manner of its use or intended use is capable of causing death or serious bodily injury. V.T.C.A. Penal Code, § 1.07(a)(11)(A) and (B). The evidence was sufficient to support the conviction of rape of the mother by the use of a deadly weapon. Appellant's first ground of error is overruled.

■ Toledo's second ground of error complains of the admittance into evidence of a weapon unconnected with appellant or the crime. In a supplemental brief, he also complains of the testimony of a martial arts instructor concerning the use of nunchakus. These two grounds will be considered together.

A martial arts instructor was called as a witness and qualified as an expert in the use of nunchakus and other forms of martial arts including karate. The witness had with him a nunchakus which was admitted into evidence for the purpose of demonstration. There was no contention that this nunchakus was the one used in the crime, but was similar. The witness was permitted to testify as to the amount of force that could be generated by its use, the different methods of use, and demonstrated its use by breaking some boards with it. The thrust of the objection is that there was no evidence of Toledo's expertise in the use of nunchakus and the only purpose of this testimony was to inflame the jury.

As discussed earlier, it was incumbent upon the State to prove that the rape was accomplished by the means of a "deadly weapon". There was no error in admitting into evidence a weapon similar to the one used in the attack for evaluation by the jury. The testimony of the martial arts instructor was admissible to show that the nunchakus was used or intended to be used in such a way that it was capable of causing death or serious bodily injury. *Danzig v. State,* 546 S.W.2d 299 (Tex.Cr.App.1977). Here, the State presented expert testimony that the nunchakus is a deadly weapon as was recommended in *Danzig v. State, supra.* Appellant's second ground of error, as added to by his supplemental brief, is overruled.

Judgment affirmed.