Stanley Eugene **BARFIELD**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 61323.

Court of Criminal Appeals of Texas, Panel No. 1.

Sept. 19, 1979.

Curt Beckcom, Austin, on appeal only, for appellant.

Patricia A. Elliott, Dist. Atty. and Jorge A. Solis, Asst. Dist. Atty., Abilene, Robert Huttash, State's Atty., Austin, for the State.

Before ONION, P. J., and ODOM and DALLY, JJ.

## OPINION

ODOM, Judge.

This is an appeal from a conviction for driving while intoxicated wherein punishment was assessed at a $50.00 fine and thirty days in jail. Appellant's sole ground of error is that the trial court erred in denying his motion to set aside the complaint and information against him in accordance with the provisions of Article 32A.02 V.A.C.C.P., known as the Speedy Trial Act.

On March 27, 1978, a complaint and information were filed accusing appellant of driving while intoxicated. On November 15, 1978, appellant filed a motion to set aside the complaint and information because of failure to comply with Art. 32A.02, supra. The court held a hearing on the motion and overruled it, noting that the reason the case had not been called sooner was the overcrowded condition of its docket. The district attorney stated that he was ready for trial at that time and had been ready for trial since March 27. He stated this was the first time he had been able to announce ready because this was the first time the case had been called for trial. Upon having his motion to dismiss overruled, appellant pled nolo contendere to the charge and had his punishment assessed.

Article 32A.02, supra, stated in pertinent part:

"Section 1. A court shall grant a motion to set aside an indictment, information, or complaint if the state is not ready for trial within:

". . .

"(2) 90 days of the commencement of a criminal action if the defendant is accused of a misdemeanor punishable by a sentence of imprisonment for more than 180 days; . . ."

This Court in *Wade v. State*, 572 S.W.2d 533 held that the time periods provided for in the Speedy Trial Act will run from the Act's effective date, July 1, 1978, for cases pending on that date. The instant case was pending on July 1, 1978 and was called for trial well beyond the applicable 90 day period. If this delay was caused because "the state [was] not ready for trial" then, under the terms of the Act, the case should have been dismissed. Appellant maintains that the word "state" includes the trial court and that the complaint and information should have been dismissed when the court was not ready to try the case within 90 days.

The right of an individual to prompt adjudication of any criminal charges against him has long been an ideal and goal of our legal system and is enshrined in the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Texas Constitution. For most of the nation's his-

tory this right to a speedy trial has been enforced through judicial interpretation of those constitutional principles. See, *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). In recent years, however, there has been a trend toward enactment of specific time limitations within which action must be taken on criminal matters. The federal experiment in this field has been the most visible. As early as 1971 the federal courts of the Second Circuit were operating under a court-promulgated plan to expedite criminal trials. *United States v. Salzmann,* 417 F.Supp. 1139 (D.C.1976). In 1972, an amendment to the Federal Rules of Criminal Procedure required each district court to prepare a plan for the prompt disposition of criminal cases. Rule 50(b), F.R.Cr.P. In 1974 Congress enacted a federal Speedy Trial Act, 18 U.S.C.A., Secs. 3161, et seq., which was to be phased in over a number of years by means of still more separate and distinct "Interim" and "Transitional" Plans and to take full effect on July 1, 1979. These speedy trial schemes, while all directed toward the expedition of criminal trials, represented different approaches to the problem.

Courts in the Fifth Circuit adopted a plan which required that:

> "[t]rial of a defendant held in custody solely because he is awaiting trial *shall commence* within 90 days following the beginning of continuous custody." (Emphasis added.)

*United States v. Methven,* 547 F.2d 896, 897 (5th Cir. 1977). This rule did not lead to wholesale dismissal of cases due to a provision which stated the trial court may grant continuances for "any period of delay occasioned by exceptional circumstances." *United States v. Rodriguez,* 497 F.2d 172, 173 (5th Cir. 1974). A delay caused by an exceptionally congested court docket was held to be just such a circumstance. The Court of Appeals for the Fifth Circuit stated:

> "The Plan does not require dismissal for delays which are necessary, i. e., beyond the control of the court or prosecu-

tion. It is intended to expedite the processing of criminal cases—not to lay a snare for an overburdened court system. The numerous 'safety valves' which have been written into the Plan make it plain that it is not intended to impose arbitrary or impractical penalties on the system of criminal justice it seeks to expedite. On the other hand, delays caused by prosecutorial or judicial inefficiency, or neglect, i. e., correctable faults, are within the aim of the Plan." *United States v. Rodriguez,* 497 F.2d at 176.

This holding was reaffirmed in *Methven,* supra. Thus, even this strictly worded speedy trial requirement could be thwarted by an overly crowded court docket.

The Second Circuit plan addressed itself not to the whole trial process by declaring that the trial itself shall commence within a certain period, but instead was aimed at the "government" and required it to "be ready for trial" within a six month period. *United States v. Salzmann,* 417 F.Supp. at 1152.

> "The very purpose of the speedy trial plan is to 'minimiz[e] undue delay and further the prompt disposition of criminal cases . . . by concentrating on prosecutorial delay.' *United States v. Furey,* supra [2 Cir.], 514 F.2d [1098] at 1101." *United States v. LaCruz,* 441 F.Supp. 1261, 1267 (S.D.N.Y.1977).

This plan did not attempt to include the courts at all.

The federal Speedy Trial Act puts mandatory limits on all stages of the criminal trial process including filing of the indictment or information and arraignment. The federal act also uses the trial "shall commence" standard seen in the Fifth Circuit plan. It addresses the question of crowded court dockets by specifically commanding that no continuance shall be granted because of general congestion of the court's calendar. 18 U.S.C.A., Sec. 3161(h)(8)(C).

■ There were, then, at least these three speedy trial schemes from the federal sector available for examination when the Texas Speedy Trial Act was formulated and enacted. The Texas Speedy Trial Act states that the court shall set aside an in-

dictment, information, or complaint "if the state is not ready for trial" within certain time limits. It thus appears that the Texas act is of the type of speedy trial scheme that addresses itself to prosecutorial delay rather than the judicial process as a whole. This is particularly true given that we would expect the drafters of the act to have been familiar with the scheme used in the Fifth Circuit which was directed at the whole judicial process and with the federal act which was even more sweeping. The draftsmen could easily have used language which would have included the courts in its terms, but instead chose to declare that dismissal would ensue if "the state" was not ready for trial.

There is further evidence in the act itself that indicates the Legislature was addressing itself to prosecutorial delay rather than delay resulting from the judicial process itself. As Judge Clinton pointed out in his concurring opinion in *Ordunez v. Bean*, Tex. Cr.App., 579 S.W.2d 911, 916–17:

> "The provisions of the act itself, reasonably construed, further support this conclusion. Thus in describing times that may be excluded in determining when the State must be ready, Section 4 speaks of inability of the State to determine location of the accused by due diligence, (4)(B); of the State knowing the location of the defendant but being unable to obtain his presence by due diligence, (5); of the State requesting a continuance because of unavailable evidence when the State has exercised due diligence to obtain it or because the State needs additional time to prepare its case, (6); of the charge being dismissed upon motion of the State, (7); and of a period of delay caused by defendant's detention in another jurisdiction and the State is aware of that detention and exercising due diligence to obtain his presence for trial. All of these instances plainly contemplate only the prosecuting attorney and just as clearly exclude the idea that the trial court is embraced within the term 'the state' being ready for trial."

This evidence is reinforced by Art. 32A.01, V.A.C.C.P. This article was enacted in the same bill as Art. 32A.02 as part of the Speedy Trial Act. Acts, 1977, 65th Leg., p. 1970, ch. 787. Art. 32A.01 addresses itself in an advisory fashion to the courts of the state, stating that, insofar as practicable, the trial of a criminal action shall be given preference over civil trials and trials of detained defendants shall be given preference over trials of others. Art. 32A.02 in its turn sets out limitations on prosecutorial delay, defining actions to be taken on one hand by "the state" and on the other hand by "the court."

■ In light of these several considerations, we construe and hold that the threshold standard for dismissal under Art. 32A.02, Sec. 1, supra, i. e., "the state is not ready for trial," refers to the preparedness of the prosecution for trial, and does not encompass the trial court and its docket. Having limited the scope of this threshold issue, we now must determine its manner of proof and what the record in this case shows in that regard.

■ Under the plan extant in the Second Circuit, the scheme most like our own, the government was required to notify the court of its readiness for trial within the given time limit.

> "Although '[t]he better practice, in those districts with heavy calendars, is to file a written notice [of readiness] with the clerk of the court for the judge's attention, and to serve a copy on the defendant,' *United States v. Pierro*, 478 F.2d 386, 389 (2nd Cir. 1973), the Government must only 'communicate its readiness for trial to the court in some fashion within the six month period.' *Id.*" *United States v. LaCruz*, 441 F.Supp. 1261, 1264 (S.D.N.Y.1977).

To impose such a requirement upon the Texas Speedy Trial Act would be to require a useless thing. It would require the state to make a meaningless and perfunctory gesture as evidenced by the facts of *Ordunez*, supra. In that case, it was pointed out that the El Paso district attorney's office filed a notice of readiness in every one of the 1200

**542**

criminal cases pending at that time in the El Paso courts.

In addition, Art. 32A.02, Sec. 3 states:

"The failure of a defendant to move for discharge under the provisions of this article prior to trial or the entry of a plea of guilty constitutes a waiver of the rights accorded by this article."

This provision would seem to require that the first move be made by the accused rather than the state. If he does not do so, he waives his rights under the Act and the state would not be required to show readiness in compliance with the Act's requirements. Once the defendant files his motion to dismiss for failure to adhere to the provisions of the Act, the state must declare its readiness for trial then and at the times required by the Act. This declaration is a *prima facie* showing of conformity to the Act,[1] but can be rebutted by evidence submitted by the defendant demonstrating that the state was not ready for trial during the Act's time limits. This evidence can be from any source including cross-examination of those responsible for preparing the state's case, and may consist of, among other things, a demonstration that the state did not have a key witness or piece of evidence available by the last day of the applicable time limit so that the state was not ready for trial within that time limit.

In the present case appellant was charged with driving while intoxicated, a misdemeanor punishable by imprisonment for more than 180 days. Under the provisions of Art. 32A.02, Sec. 1(2), if the state was not ready for trial within 90 days, the information should have been dismissed. At the hearing on the motion to dismiss, the prosecuting attorney stated that he was ready to try the case then and had been ready to try the case ever since the complaint and information had been filed. No evidence was elicited to rebut this statement of readiness and it remained unchallenged. This being the case, we hold that the requirements of the Speedy Trial Act

were fulfilled, and the state was shown to have been ready for trial within 90 days of the filing of the complaint and information.

The judgment is affirmed.

DALLY, J., concurs.

---

1. There is nothing in the Act that requires the prosecutor to actually attempt to set a case for trial. If prosecutorial delay is to be adequately addressed, the legislature may wish to amend the Act to require the state to exercise due diligence in seeking a court date within the time limits of the Act as well as being ready for trial within those limits.