Charles Walton HAMILTON, Appellant,

v.

The STATE of Texas, Appellee.

No. 65622.

Court of Criminal Appeals of Texas, Panel No. 2.

June 24, 1981.

Rehearing Denied Sept. 23, 1981.

Randy Schaffer, Houston, (Court-appointed), for appellant.

John B. Holmes, Jr., Dist.Atty., Ray Elvin Speece and Gerald Fry, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

Before DALLY, W. C. DAVIS and CLINTON, JJ.

## OPINION

DALLY, Judge.

This is an appeal from a conviction of the offense of theft; the punishment is imprisonment for six years.

The sole ground of error advanced by appellant is that the trial court erred in refusing to dismiss the indictment under the requirements of the Texas Speedy Trial Act, Art. 32A.02, V.A.C.C.P.

A complaint for the offense of theft was filed against appellant on December 12, 1978, and he was indicted on January 9, 1979. Appellant was in custody in the Harris County jail under an assumed name at this time. On January 15, 1979, the State filed a written announcement of ready "subject to fourteen days notice within which to secure attendance of its witnesses" provided the State located the appellant. The State thereafter filed another such announcement of ready on April 16, 1979. On August 15, 1979, appellant had been located and served with a copy of the indictment. On August 22, 1979, the trial court appointed counsel for the appellant, the State filed a written announcement of ready for trial, and both parties agreed to set the case for trial on September 20, 1979. On September 12, 1979, both parties then agreed to reset the case for trial on October 2, 1979. On September 25, 1979, appellant filed his motion to set aside the indictment alleging that he had not been brought to trial within 120 days after the return of the indictment on January 9, 1979. On October 2, 1979, a hearing was held on appellant's motion to set aside the indictment and the motion was overruled. Appellant subsequently entered a plea of not guilty before the trial court and was found guilty based on his written stipulation in evidence.

At the hearing on appellant's motion to set aside the indictment, appellant presented evidence in an attempt to rebut: (1) the State's claim of readiness for trial, both on January 15 and on April 16, 1979, and (2) the State's claim that the period of time prior to August 15, 1979, was excludable from the prescribed time limitations of Art. 32A.02, Sec. 1, supra. It is the State's later claim that is dispositive of this appeal.

Art. 32A.02, supra, in pertinent part provides:

"Section 1.  A court shall grant a motion to set aside an indictment, information, or complaint if the state is not ready for trial within:

"(1) 120 days of the commencement of a criminal action if the defendant is accused of a felony;

" * * *

"Section 4. In computing the time by which the state must be ready for trial, the following periods shall be excluded:

" * * *

"(4) a period of delay resulting from the absence of the defendant because his location is unknown and:

"(A) he is attempting to avoid apprehension or prosecution; or

"(B) the state has been unable to determine his location by due diligence;

" * * *

"(10) any other reasonable period of delay that is justified by exceptional circumstances."

On December 2, 1978, which was prior to the date the complaint in the instant case was filed, appellant was arrested for an unrelated offense and placed in confinement in the Harris County jail under the assumed name of "Robert Moore," an alias appellant had never used before. He remained in confinement and on January 8, 1979, "Robert Moore" was convicted of that offense and his punishment was assessed at imprisonment in the Harris County jail for one year. On August 15, 1979, the appellant had been located in the jail and the district attorney's office served him with a copy of the indictment; the State then announced ready for trial on August 22, 1979. The State asserts that the period of time prior to August 15, 1979, is excludable under Art. 32A.02, Sec. 4(4), supra, because "[a]ppellant's use of the alias Robert Moore and the giving of a false date of birth in connection with that alias clearly thwarted any efforts on the part of the State to identify Robert Moore as being the same person as Charles Walton Hamilton ... and were clearly attempts to 'avoid apprehension or prosecution.'"

Appellant argues that the period of time from the filing of the complaint through August 15, 1979, is not excludable because the State failed to show that it exercised due diligence in its attempt to locate him. He says the Harris County Sheriff's Office knew of his whereabouts as early as January 9, 1979; appellant testified that on this date and while he was being detained under the assumed name, Sheriff's officers transferred him to municipal court to face a charge of escape under his real name, Charles Walton Hamilton. He also says the Harris County Sheriff's Office knew or should have known of his whereabouts because his jail record contains both his real name and the assumed name; the assumed name and all other entries on the jail record are handwritten, except that which says "Hamilton Charles Walton Real Name," which is typed. He does not say the district attorney's office knew of his confinement under the assumed name prior to August 15, 1979, and we find no evidence that would have supported such a contention.

■ There are many instances in the Texas Speedy Trial Act that exclude certain periods of time from its prescribed time limitations. *Fraire v. State*, 588 S.W.2d 789 (Tex.Cr.App.1979). The appellant relies on Art. 32A.02, Sec. 4(4)(B), supra, and says the State failed to exercise due diligence in determining his location. However, we find that either Sec. 4(4)(A) or Sec. 4(10) of Art. 32A.02, V.A.C.C.P., is dispositive of this appeal, since the delay in appellant's prosecution was properly attributable to his *own action* in the use of an assumed name that apparently made his location unknown to the district attorney's office until sometime in August 1979. Whatever the appellant's actual motives were in choosing an assumed name, the trial court may have properly concluded from the circumstances peculiar to this case that the appellant's motive was to avoid prosecution for the instant offense. See Art. 32A.02, Sec. 4(4)(A), supra. In any event, we find that the State brought to the trial court's attention an "exceptional circumstance" that justified the State's inaction prior to August 15, 1979—the appellant was arrested and placed in confinement under an assumed name for an unrelated offense prior to the filing of the complaint in the instant offense, he was convicted of that offense under the assumed name, and there is no evidence that anyone in the district attorney's office knew of his continuous confinement under the assumed name

and simply neglected to prosecute him. See Art. 32A.02, Sec. 4(10), supra. See and compare *Pate v. State,* 592 S.W.2d 620 (Tex. Cr.App.1980). Moreover, the "Robert Moore" jail record which was made for the unrelated offense was the only record offered in evidence by appellant. Flo Gordon, a deputy in the Harris County Sheriff's Office, was called by appellant and testified that this jail record, which now reflects the present status of appellant, had been previously consolidated with a separate jail record for Charles Walton Hamilton. The birth date shown on the jail record was May 5, 1958; appellant testified that his date of birth was February 8, 1956. Gordon did not say when the jail records had been consolidated and she did not say if any cross-index of the separate records prior to their consolidation showed appellant and Robert Moore to be the same person. Thus, the evidence does not establish that the appellant's typed in real name, which is now on the jail record, was on the record at any particular time prior to August 15, 1979. The only evidence supporting appellant's contention is his unrebutted testimony that he had been transported by Sheriff's officers to answer a charge of escape under his real name; however, there was no corroboration of his testimony. The trial judge, as the sole judge of the weight and credibility of the witnesses at such a hearing, apparently chose to disbelieve this part of the appellant's testimony since he overruled the motion to dismiss the indictment. See *Luckett v. State,* 586 S.W.2d 524 (Tex.Cr.App.1979); *Tatom v. State,* 555 S.W.2d 459 (Tex.Cr. App.1977); *Clark v. State,* 548 S.W.2d 888 (Tex.Cr.App.1977); *Powell v. State,* 479 S.W.2d 685 (Tex.Cr.App.1972).

██ We find it unnecessary to consider the appellant's contention that the State failed to demonstrate due diligence in determining his location, Art. 32A.02, Sec. 4(4)(B), supra, since we have found that the evidence supports the conclusion that the appellant attempted to avoid prosecution by the use of an assumed name, Art. 32A.02, Sec. 4(4)(A), supra, and his own action in using an assumed name combined with the other circumstances of this case created an "exceptional circumstance," Art. 32A.02, Sec. 4(10), supra, that in this instance excused the State from proceeding to trial within the prescribed time period of Art. 32A.02, Sec. 1(1), supra. The trial court properly overruled the appellant's motion to dismiss the indictment.

The judgment is affirmed.

CLINTON, Judge, dissenting.

Appeal is taken from a conviction for the offense of theft upon appellant's plea of not guilty entered in a trial to the court, sitting without a jury. Punishment was assessed at six years confinement.

Appellant raises a single ground of error contending that the trial court reversibly erred in refusing to dismiss the indictment underlying his conviction pursuant to the provisions of the Texas Speedy Trial Act, Article 32A.02, V.A.C.C.P.

The record reflects that a complaint was filed on December 12, 1978, alleging that appellant had committed the theft offense which is the subject of the instant case; the return of an indictment thereon followed on January 9, 1979.

On both January 15, 1979 and April 16, 1979, the State filed identical written announcements of "ready" with the District Clerk, each of which stipulated the State's readiness was "subject to fourteen days notice within which to secure attendance of its witnesses." [1]

---

1. While the phrase quoted in the text is the characterization employed throughout the State's brief on appeal, I recite the content of these announcements of ready verbatim here:

   "Comes now the State of Texas, through the undersigned Assistant District Attorney, and announces to the Court that the State is ready for trial in the above entitled and numbered cause. *The State respectfully requests at least fourteen (14) days notice as to the date of trial so that subpoenaes may be requested and served upon the necessary witnesses.*"

   (All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.)

Some eight months after the filing of the complaint, on August 15, 1979, appellant was served with a certified copy of the indictment at the Harris County Jail where he had been continuously confined since December 2, 1978, apparently pursuant to an unrelated cause on which he had been convicted under an assumed name. A week later, counsel was appointed to represent appellant, and also on that day, August 22, the State filed a third announcement of ready, "subject to fourteen days notice within which to secure attendance of its witnesses." [See n. 1, *ante*.]

On September 25, 1979, defense counsel filed a motion to set aside the indictment for failure to provide a speedy trial, alleging that appellant had at all times since the return of the indictment been in the custody of Harris County and "immediately available for service of the indictment;" that the State had failed to try him within 120 days of the indictment's return; that the State had been "in no wise ready for trial for the simple reason that the State's apparatus had not complied with the Statue [sic] in delivering the certified copy of the indictment to a party in custody. (In this case in custody in the same County);"[2] and finally, that the State was entitled to no period of exclusion in computing the time by which it must be ready under Section 4 of Article 32A.02, supra.

Pursuant to an agreed setting filed on the day counsel had been appointed to represent appellant, the cause was called for trial on October 2, 1979. On that day, the State filed a fourth announcement of ready, but the content of this announcement averred:

> "Come now the ... undersigned Assistant District Attorney, and files this announcement in behalf of the State, and presents to the Court *that it is ready for trial* in the above numbered and entitled cause on this the 2nd day of October, 1979."

The trial court entertained appellant's motion to dismiss the indictment and convened a hearing thereon. After appellant adduced testimony, the State offered no evidence in rebuttal, but the trial court summarily overruled appellant's motion.

On May 6, 1980, appellant entered a plea of not guilty in a trial before the court and was found guilty based on his written stipulation of evidence. Punishment was assessed at six years confinement, and it is from such conviction that appellant prosecutes this appeal.[3]

2. Counsel's reference, as cited, is to Article 25.01, V.A.C.C.P., which provides:

> "In every case of felony, when the accused is in custody, or as soon as he may be arrested, the clerk of the court where an indictment has been presented shall immediately make a certified copy of the same, and deliver such copy to the sheriff, together with a writ directed to such sheriff, commanding him forthwith to deliver such certified copy to the accused."

3. On October 4, after the hearing on the motion to set aside the indictment, appellant entered a plea of *nolo contendere* upon a written stipulation of evidence, and the trial court assessed his sentence at six years. Appellant gave notice of appeal and filed a motion for new trial again urging his motion to set aside the indictment, which was overruled on October 15, 1979. After the record was completed and approved by the trial court counsel for both the State and defense were so advised on April 10, 1980.

Thereafter, apparently *sua sponte*, the trial court entered an order granting a new trial on May 6, 1980; this order recited that appellant's previous plea of *nolo contendere* had been entered involuntarily due to his having been "misled to the extent that he was advised that by entering [such a plea], he could preserve his appellate rights with regard to an issue arising under the Texas Speedy Trial Act, when that was an inaccurate statement of law." See intervening opinion in *Luna v. State*, 602 S.W.2d 267 (Tex.Cr.App.1980) [wherein on State's motion for rehearing a majority of the Court en banc relied on the panel opinions of Judge Douglas in *Ramirez v. State*, 590 S.W.2d 509 (Tex.Cr.App.1980), construing Article 32A.02, § 3, supra, to provide that the entry of a guilty plea waives all rights under the Speedy Trial Act; and, *Fleet v. State*, 590 S.W.2d 714 (Tex.Cr.App.1979) (opinion withdrawn from bound volume of Southwestern Reporter), holding that because "a plea of nolo contendere is the equivalent to a plea of guilty," entry of such a plea likewise waives all rights under the Act]. Accord *Wooten v. State*, 612 S.W.2d 561 (Tex.Cr.App.1981).

Article 32A.02, supra,[4] provides in part relevant to the instant case:

"Sec. 1. A court shall grant a motion to set aside an indictment, ... if the State is not ready for trial within:

(1) 120 days of the commencement of a criminal action if the defendant is accused of a felony;

\* \* \* \* \* \*

Sec. 2(a) ... [A] criminal action commences for purposes of this article when an indictment, ... or complaint against the defendant is filed in court, unless prior to the filing the defendant is either detained in custody or released on bail or personal bond to answer for the same offense or any other offense arising out of the same transaction, in which event the criminal action commences when he is arrested.

Sec. 4. In computing the time by which the State must be ready for trial, the following periods shall be excluded:

\* \* \* \* \* \*

(4) a period of delay resulting from the absence of a defendant *because his location is unknown and*:

(A) he is attempting to avoid apprehension or prosecution; or

(B) the State has been *unable* to determine his location *by due diligence*;
\* \* \*"

In this Court, appellant contends that in the hearing on his motion to set aside the indictment, he not only established that the State was not in fact ready for trial within 120 days of the filing of the complaint,[5] but also, that the State failed to employ due diligence to determine appellant's location within that period and, thus, is entitled to no statutory period of exclusion. For its part, the State argues that its January 15, 1979, announcement of ready "subject to fourteen days notice within which to secure attendance of its witnesses" was sufficient to satisfy requirements of the Act; that appellant failed to meet his burden of proving that the State was not actually ready at

that time; and that the period of time between appellant's arrest and his first appearance in court on August 22, 1979, should be excluded from the time calculations. See Section 4(4)(A) and (B) of the Act, recited *ante*.

The record reveals that the State filed one written announcement of ready, "subject to fourteen days notice ...," within the 120 day period following filing of the complaint against appellant. In *Faire v. State*, 588 S.W.2d 789, 791 (Tex.Cr.App.1979), it was held that "when the State announces ready *and there is no challenge to this announcement to show otherwise* by an accused we will presume that the State was ready. *Ordunez v. Bean*, 579 S.W.2d 911 (Tex.Cr.App.1979) (opinion concurring ... at page 919). See also *Hazen v. Pickett*, 581 S.W.2d 694 (Tex.Cr.App.1979). [(opinion concurring at 696)]."

While serious doubt exists as to whether the State's January 15 written announcement is sufficient to establish a *prima facie* showing of readiness on that day, we need not pass on that question. Because the accused here did challenge as a factual matter the degree of the State's preparedness, the written announcement is not dispositive of the issue before us. E. g., *Pate v. State*, 592 S.W.2d 620 (Tex.Cr.App.1980).

In *Barfield v. State*, 586 S.W.2d 538 (Tex.Cr.App.1979), a panel of this Court held that the threshold standard for dismissal under the Act refers to the preparedness of attorneys for the State, in fact, to proceed to trial on the merits. Also determined in *Barfield*, supra, is the manner of proof of this threshold standard:

Once the defendant files his motion to dismiss for failure to adhere to the provisions of the Act, the State must declare its readiness for trial then and at the times required by the Act. This declaration is a *prima facie* showing of conformity to the Act, but can be rebutted by evidence submitted by the defendant demonstrating that the State was not

---

4. Hereinafter referred to as the Speedy Trial Act or the Act.

5. April 11, 1979, was the 120th day after the complaint was filed on December 12, 1978.

ready for trial within the Act's time limits. This evidence may come from any source including cross examination of those responsible for preparing the State's case, and may consist of, among other things, a demonstration that *the State did not have a key witness* or piece of evidence available by the last day of the applicable time limit so that the State was not ready for trial within that time limit."

586 S.W.2d at 542.

At the hearing on appellant's motion to set aside the indictment, appellant called Assistant District Attorney Gerald Fry to testify regarding the State's readiness for trial, both on January 15 and on April 11, 1979. Fry related that it was his understanding that when announcements were filed on January 15 and April 16 of 1979, "the defendant was not arrested ... but we announced that we would be ready, subject to serving witnesses if the defendant was arrested." Defense counsel continued,

"Q: All right. But so far as announcing ready for trial in the true sense of the word, you didn't have your witnesses here? * * *

A: *No. We did not have our witnesses here.*

Q: You didn't have a defendant here?

A: We did announce ready, subject to fourteen days in order to subpoena the witnesses. * * * The readies that you're talking about were readies that were filed on nontrial dates.

Q: I understand.

A: Now the readies that we file on trial dates are the readies that are filed when the witnesses are present *and we are ready for trial on that date.*

Q: All right, sir. But what I'm saying, you didn't schedule within the time limit from the date of the indictment, you didn't schedule a trial date during that time, did you?

A: *The defendant was not in custody. We could not schedule a trial date."*

Fry conceded that the State would at least have to have the complaining witness available in order to be ready to go forward with trial of the case. The trial court pointed out that the record indicated that the complaining witness was not subpoenaed until October 2, 1979; Mr. Fry testified that his file indicated the subpoena had issued on September 20, 1979, but affirmed that such date was "long after the 120 days [had] passed since the January 10th [sic] indictment."

We[6] hold that appellant rebutted the State's claim of readiness within the 120 day period in issue, demonstrating that the State was in fact not ready to proceed to trial during that time. *Pate v. State,* supra; cf. *Calloway v. State,* 594 S.W.2d 440 (Tex.Cr.App.1980); *Faire v. State,* supra; *Barfield v. State,* supra.

But such holding does not terminate our inquiry, for, as noted in *Faire v. State,* supra, at 791, "[t]here are many instances in the Act which exclude certain times [prior to] trial before the [120 day period of the] Act is applicable [*per se*]. It was not provided for by the Legislature that the cause must be tried within 120 days." See Section 4 of the Act.

Thus, upon appellant's establishment that the State had not been ready at any time by April 11, 1979, the burden shifted to the State "to show why it was not ready within the 120 days so as to bring it within any of the exceptions to the Speedy Trial Act."[7]

---

**6.** This opinion, having been originally proposed for majority disposition of the cause, but having failed to carry the day, should be read so that all references to "we" are intended as "I" or "I would."

**7.** Suffice it to say that it was fully acknowledged by the State that the prosecution was

unaware of appellant's availability for trial of the cause for over eight months after the complaint was filed. Thus, it is clear that the State was in no position to proceed to trial within that time. Compare *Pate v. State,* supra. Before a material issue arises as to the State's entitlement to a statutory exclusion of time, the trial court must find, or the State must neces-

*Pate v. State,* supra, at 621. The State, however, offered nothing at the hearing on appellant's motion.

On appeal, the State claims, in effect, that *appellant* failed to establish that due diligence on the part of the prosecution would have led to the discovery that appellant had been confined in their county jail, under an assumed name, since before the complaint was filed, and invites this Court to hold that appellant's use of the alias "Robert Moore," coupled with "his failure to apprise the authorities of his identity" constitutes a clear attempt to "avoid apprehension or prosecution," within the meaning of Section 4(4)(A). We decline to adopt such an analysis, for while the State apparently chose not to avail itself of the opportunity to present evidence at the hearing, appellant did not stop so short.

Appellant testified that he had been in the Harris County Jail since early December of 1978,[8] charged with the offense of unauthorized use of a motor vehicle. According to appellant, he entered a guilty plea to this offense on January 8, 1979, and was convicted[9] under the name of "Robert Moore," an alias he had never used before. Appellant claimed that the authorities knew his real name was Charles Walton Hamilton, and had obtained his fingerprints and mug shots upon his arrest for the unauthorized use of a motor vehicle charge, as well as from various arrests under the name of Charles Walton Hamilton.

Appellant related that while incarcerated as "Robert Moore" he had been charged in municipal court for a misdemeanor escape from the city compound under the name of

Charles Walton Hamilton, and on January 9, 1979, the Harris County Sheriff's Office transported him—as Charles Walton Hamilton—to municipal court for trial, then transported him back on the same day.

Deputy Flo Gordon of the Harris County Sheriff's Department testified that her present duty assignment was in "central records, jail division." Defense counsel first inquired:

"Q: For purpose[s] of the record, central records keeps records on all prisoners in the Harris County jail; is this correct?

A: That's correct.

Q: And you use a computer system and a cross-index system of some sort, do you not?

A: That's correct.

Q: Does coentral records also rely on the fingerprint system for sorting out the identification of prisoners?

A: Yes, sir."

Gordon was asked whether fingerprints could be checked out "through some central bureau" if they were all that was available; she replied that she did not "work in identification" and did not "know how they work in there." It was brought out that the jail record concerning appellant which was in Gordon's possession, reflected a different date of birth than that given by appellant in his testimony. Gordon stated she did not have a record of transports on the jail card and there was no indication, one way or the other, that appellant had been taken to municipal court on January 9.[10]

The remainder of Gordon's testimony is best related as follows:

---

sarily concede, that it was not ready within the initial 120 day period while demonstrating that its posture in this regard has been due to something other than prosecutorial neglect.

**8.** The record reflects that appellant was arrested and confined on December 2, 1978.

**9.** Appellant claimed that he pled guilty to a misdemeanor, presumably a lesser offense, and was assessed a jail term; though the record before us does not clearly establish this, we may assume it is so because the record does reflect a punishment assessment of "one year."

**10.** The jail record, later introduced into evidence, over objection, as Defense Exhibit No. 1, verifies this testimony. While the jail card reflects that a "hold" was placed on appellant by the Houston Police Department for the offense of "escape," there is no entry in the spaces provided for "date hold placed" and "date hold lifted." The record also informs us that appellant was arrested for the offense of "escape," sentenced to "20 days," which sentence was to begin on "12–2–78," in "CC5" (City Court No. 5), but does not reveal on what date appellant was tried in city court.

"Q: Do you have any cross-index to show that Robert Moore is in fact Charles Walton Hamilton?

A: Only by I guess fingerprints. I can't vouch for it.

Q: Could you tell us how you came to bring to the courtroom both the records of Moore and ... Hamilton?

A: The jail card I have is what the computer printout shows to be a spin number which identifies the subject. *The only jail card I have is the one that he's presently in custody on, and it shows Charles Hamilton to be Robert Moore.*

\* \* \* \* \* \*

Q: On your records you show the name of Robert Moore at the top and then you show under there a/k/a, which means also known as Charles Walton Hamilton, and you have it marked as the real name of that; is that not correct?

A: Yes, sir."

It is not refuted by appellant that on August 15, 1979, the prosecution "discovered" that he had in fact been in Harris County custody since the commencement of the felony action here in issue, and on that day served him with a copy of the indictment. However, the State offered no explanation of how it ultimately made this "discovery," nor of what efforts it made prior to that time to ascertain the whereabouts of appellant. Thus, we are uninformed as to both the quality and quantity of "diligence" on the part of the State, which was necessitated by the circumstances.

Further, the most damaging testimony presented by appellant—that he had been properly identified and trasported by the County Sheriff's Office, as Charles Walton Hamilton, to municipal court on the very day the indictment herein was returned—

was left unrebutted by the State. It is urged by the State that two unrelated jail cards—one regarding "Robert Moore" and another regarding "Charles Walton Hamilton"—existed until August 15, when they were consolidated pursuant to the State's "discovery" that appellant was in Harris County custody. In support of this claim, the State points to the fact that all entries contained in Defendant's Exhibit No. 1 are handwritten, except that which reflects "HAMILTON CHARLES WALTON REAL NAME," which was typed. The State argues that this indicates that the typed entry was made later than the others. But it is equally reasonable to conclude that the jail cards were consolidated (if they were) on January 9, 1979, the day of appellant's transport to municipal court. At any rate, *there is nothing in the record before us to establish that jail records concerning appellant ever reflected anything other than that "Charles Walton Hamilton" was the "real name" of "Robert Moore."* And lastly, though the witness Flo Gordon admitted that she did not "work in identification" and did not "know how they work in there," she confirmed more than once that the central records division employed a system for prisoner identification utilizing fingerprints. The State offered no evidence to refute this.

We are constrained to hold that the State wholly failed to meet its burden of proving that the period of delay between December 12, 1978 and August 15, 1979, resulted "from the absence of the defendant because his location [was] unknown and the State [was] unable to determine his location by due diligence." [11] See Article 32A.01, supra, Section 4(4)(B).

We are also unpersuaded by the State's argument that appellant's use of a new alias, "Robert Moore," and misstatement of his date of birth when arrested on an unrelated charge, alone establish that appellant

---

11. We do not conclude that the State failed to employ due diligence, nor that due diligence would have avoided the delay. Our holding is merely based on the fact that the record is devoid of evidence on these issues and, thus,

there is a failure of proof in support of the State's position. See *Pate v. State*, supra; accord, *United States v. Quillen*, 468 F.Supp. 480 (E.D.Tenn.1978), *aff'd mem.*, 588 F.2d 831 (6 CA 1978).

was "attempting to avoid ... prosecution," so as to excuse the State's lack of preparedness under Section 4(4)(A) of the Act. While such an assertion might have been well taken if supported by evidence adduced in the trial court, advancement of such a contention for the first time on appeal seeks a disposition from this Court based on purest speculation.[12] Thus, the State likewise failed to meet its burden of establishing that the delay was occasioned by appellant's attempt "to avoid prosecution" rendering his whereabouts unknown to the State. Article 32A.02, supra, Section 4(4)(A).

Our review of the record reveals no written findings of fact or conclusions of law on which the trial court based its denial of appellant's motion. Nor did the trial court announce oral findings at the time it made such ruling; the only comment contained in the record which might suggest the trial judge's basis for the denial of the motion, was made during the hearing: that appellant "was in jail in December and copped out for a year in jail under an assumed name, and apparently nobody knew who he was until August."

Having determined that the State failed to show either an exercise of due diligence to determine the location of appellant, or that appellant was attempting to avoid prosecution in this cause, I would hold appellant is entitled to relief.[13] I would accordingly hold that the trial court erred in overruling appellant's motion to set aside the indictment for failure to provide a speedy trial under the provisions of the Speedy Trial Act.

I would order the judgment of conviction reversed, the indictment dismissed and appellant discharged under the terms of Article 28.061, V.A.C.C.P.

To the decision of the panel majority doing otherwise, I respectfully dissent.

Before the court en banc.

## DISSENTING OPINION TO DENIAL OF APPELLANT'S MOTION FOR LEAVE TO FILE MOTION FOR REHEARING

TEAGUE, Judge, dissenting.

I concur in what Judge Clinton said in his dissenting opinion in the panel decision in this cause. The appellate record not only fails to support the State's argument that the period of time prior to the August 15, 1979, service of the indictment should be excluded from Speedy Trial Act calculations under Art. 32A.02, § 4, V.A.C.C.P., but instead the record affirmatively shows that none of the exclusionary provisions of that section of the Act are applicable to the circumstances and facts of this cause.

The Act first requires the State to indicate its readiness for trial within 120 days of the commencement of a felony criminal action. Art. 32A.02, § 1(1); *Pate v. State*, 592 S.W.2d 620 (1980).

When the State has done so, the burden shifts to the defendant to refute the State's claim of readiness. *Pate*, supra; *Fraire v. State*, 588 S.W.2d 789 (1979). The panel decision in this cause correctly held that appellant successfully refuted the State's claims of "ready" on January 15, 1979, and April 16, 1979, since the State had neither subpoenaed its witnesses nor served a copy of the indictment on the incarcerated appellant.

The burden was then on the *State* "to show why it was not ready within the 120 days so as to bring it within any of the exceptions to the Speedy Trial Act." *Pate*, supra, at 621.

---

12. Indeed, considering the presumption of innocence, Article 38.02, V.A.C.C.P.; V.T.C.A. Penal Code, § 2.01, and that the constitutional function of an indictment has been held to be to give an accused "notice" of a prosecution against him, see *Brasfield v. State*, 600 S.W.2d 288 (Tex.Cr.App.1980) (opinion on State's motion for rehearing), we would be loath to embrace such a contention as a holding.

13. The State has neither contended at trial nor on appeal that it is entitled to any statutory period of exclusion under the Act, other than that contained in Subsection (4) of Section 4, and I find none to be applicable.

The State simply did not sustain its burden of proof as to the exclusionary provisions of the Act in this cause. In fact, it called no witnesses and presented no evidence during the brief hearing on appellant's motion, apparently assuming that its claims of "ready" had been, and would be, upheld as sufficient compliance with the Act. To date, its position has been wrongfully sustained. The facts and circumstances used to support the majority panel decision are gleaned from appellant's testimony, the jail record introduced by appellant, and the testimony of the prosecutor representing the State at the hearing, which was adduced by appellant in his successful effort to refute the State's prior announcements of "ready." However, though those facts and circumstances are at least equally supportive of appellant's contentions on appeal, they do not demonstrate, by even a preponderance of the evidence, the applicability of any of the Sec. 4 exclusionary provisions of the Speedy Trial Act.

Taking those provisions one by one, it appears to me that the majority panel decision had good reason to avoid determining the applicability of subsection 4(4)(B), upon which the State particularly relies, since there was no evidence adduced indicating the State's "diligence" in attempting to locate the supposedly "absent" appellant, as required by that exception. In fact no evidence was offered to show the *slightest* effort to locate appellant prior to the August 15, 1979, service of the indictment.

Turning then to subsection 4(4)(A), I note that it requires the State to prove three elements in order for it to be excused from the time constraints of the Act: (1) that a period of delay resulted from the "absence" of the defendant (2) because his location was unknown, and (3) he was attempting to avoid apprehension or prosecution. The prosecutor who testified at the hearing on appellant's motion, Hon. Gerald Fry, never testified that appellant was "absent" or that his location was unknown, as required by the statute. Those facts were apparently *inferred* from the following testimony of the prosecutor, which was adduced by appellant in his questioning concerning the State's claim of "readiness":

"Q. [Defense Attorney] Does your file reflect whether or not the State had subpoenaed any witnesses for either of those two dates [January 15, 1979, and April 16, 1979]?

"A. *My understanding is* that the defendant was not arrested on those dates and we showed the case as a nonarrest case, but we announced that we would be ready, subject to serving witnesses if the defendant was arrested."

*   *   *   *   *   *

"Q. All right, sir. But what I'm saying, you didn't schedule within the time limit from the date of the indictment, you didn't schedule a trial date during that time, did you?

"A. *The defendant was not in custody.* We could not schedule a trial date.

"Q. Do you have any dispute with the defendant's testimony that he was in jail from December 2nd until the current day—last October 2nd? Do you have any dispute with that testimony that he's just given?

"A. *I have no personal knowledge of whether he was in jail or not.*

"Q. You know, of course, that he was brought in from the jail this morning?

"A. I have no personal knowledge of that either.

"Q. Do you have any evidence to show that he was out in the free world during that time?

"A. No, I don't.

"Q. You do know that he has an alias of Bob Moore or some such name; is that not true?

"A. I have no knowledge of that other than his testimony today." (Emphasis supplied.)

The emphasized portions of the above-quoted testimony serve only to prove that Fry had *no personal knowledge whatsoever* of whether the defendant was "absent" of

whether his "location [was] unknown" to the State, as required by Art. 32A.02, § 4(4), V.A.C.C.P. This testimony did not satisfy the burden of proof imposed on the State by that statute. Contrast it with the testimony of appellant:

"Q. All right. What name were you logged in into the jail?

"A. Under Robert Moore.

"Q. Is Robert Moore an alias that you have used previously?

"A. No, sir.

"Q. All right. *Did they know that you were also Charles Walton Hamilton.*

"A. *Yes, sir.*"

\* \* \* \* \* \*

"Q. All right. So you were transferred to the city courts to face a charge of walking off from the city compound under the name Charles Walton Hamilton?

"A. Yes, sir.

"Q. And the Sheriff of Harris County brought you in the city court; is that correct?

"A. Yes, sir.

"Q. And then they received you back into the Harris County jail?

"Q. Yes.

"THE COURT: Put some date on that.

"Q. Could you give us the approximate date of this event?

"A. January 9, 1979." (Emphasis supplied.)

Appellant's testimony that the law enforcement authorities of Harris County knew at the time he was "booked" into jail that he was in fact Charles Walton Hamilton was corroborated by the jail record which first lists his name as "Robert Moore," but in the place for "AKA" (also known as) appellations, also lists "HAMILTON CHARLES WALTER REAL NAME." The State, though it had the burden of proof of showing that appellant was "absent," and his location was unknown, offered no evidence which would support its suggestion on appeal that appellant's real name was typed onto the jail record at some time subsequent to the service of the indictment on appellant on August 15, 1979, and I see no reason to presume this fact to appellant's detriment.

Appellant's testimony was also corroborated by a document entitled "Information Concerning Setting of Bail," which was filed in the trial court on February 16, 1979, and which was included in the appellate record.

The formal complaint, which initiated the instant criminal prosecution, was filed in Harris County Justice Court, Precinct No. 1, on December 12, 1978, by Assistant District Attorney James Jordan, under justice court Cause No. 351921. Jordan also signed an instrument entitled "Information Concerning Setting of Bail," see supra, which displays the same cause number. The instrument notes appellant's past and pending criminal cases, recommends that bail be set at $40,000, and most significantly, lists the defendant's name as "Charles Walton Hamilton AKA Robert Moore," with both names apparently written by the same hand at the same time—presumably prosecutor Jordan's.[1]

On January 9, 1979, appellant was indicted by a Harris County grand jury. Though reference was made to the justice court cause number mentioned above, appellant's "Robert Moore" alias was dropped in the indictment. The record indicates that the

---

1. We observe that the record on appeal contains certain documents, although apparently not "noticed" by any of the parties below, that were presumably in the trial court's file when the hearing on appellant's motion to dismiss the indictment was held. Although the record on appeal reflects that the complaint was filed in the Justice of the Peace Court on December 12, 1978, this instrument was then apparently sent to the Harris County District Clerk's office on the same day for filing, for it bears a District Clerk file mark date of December 12, 1978. However, it was then sent "DIRECT TO GRAND JURY" on February 14, 1979. Eventually it was again filed with the District Clerk on February 16, 1979. The document entitled "Information Concerning Setting of Bail," signed by Jordan, reflects a file mark of the District Clerk showing it was also filed on February 16, 1979. All of these documents reflect the district court and the cause number of the indictment under which the cause was finally tried.

papers in the justice court were transmitted to the grand jury and were subsequently filed in the district court file of the cause for which appellant was indicted, i. e., the instant case on appeal. See fn. 1, supra.

It is therefore apparent to me that the State did not "discover" on August 15, 1979, that appellant had been in jail since the date of the indictment; rather, we are presented with a situation where the right hand did not know what the left hand was doing. While Fry testified at the hearing on appellant's motion to dismiss the indictment that he had no personal knowledge of appellant's whereabouts prior to August 15, 1979, he did not, and apparently could not, testify that *no one* in the district attorney's office was aware that appellant had been booked into the jail as "Robert Moore," an alias he had not used before.

I would therefore hold that the State failed to prove the applicability of the exclusionary provisions of subsection 4(4). It is difficult to understand how one can *ever* be "absent," within the meaning of the statute, while residing in the jail of the situs where a complaint is filed and an indictment returned. In the alternative, if we construe the statutory term "absent" to encompass this situation, the State never proved by even a preponderance of the evidence that appellant's location was unknown, as required by subsection 4(4); all it proved was that the particular prosecutor in attendance at the hearing on appellant's motion had no personal knowledge of appellant's whereabouts prior to August 15, 1979.

Although this should have ended our inquiry into the applicability of the Speedy Trial Act exclusionary provisions, the majority panel decision tenaciously continued its analysis, and held that appellant, by giving a new alias when he was booked into jail on December 2, 1978, was "attempting to avoid apprehension or prosecution" in the instant case, within the meaning of Art. 32A.02, § 4(4)(A), V.A.C.C.P.

Appellant could not have been avoiding "apprehension" when he was being booked into the jail on December 2, 1978, as he had already been apprehended, albeit for a different offense. And I cannot reasonably infer from this record that appellant was attempting to avoid prosecution in this cause, when the complaint was not even filed until December 12, 1978. One may search the record in vain for the slightest showing that appellant was expecting or anticipating prosecution for this offense. There are many reasons one might use an alias, e. g., to avoid service in unrelated civil matters, because of delinquent bills or child support payments, or to avoid losing a job because of having been arrested. It is only pure speculation and inference to hold that appellant used an alias on December 2, 1978, in an effort to avoid a prosecution that had not even commenced. The State had the burden of proof on this issue, and again, failed to prove by even a preponderance of the evidence the applicability of Art. 32A.02, § 4(4)(A), V.A.C.C.P.

Finally, it follows from the foregoing discussion that we are not presented with a "reasonable period of delay that is justified by exceptional circumstances." Art. 32A.02, § 4(10), V.A.C.C.P. Use of this "catch-all" provision should be limited to situations which the Legislature could not reasonably have foreseen and included among the specific exceptions in Sec. 4. *Ordunez v. Bean,* 579 S.W.2d 911, 918 (1979) (Clinton, J., concurring), citing *United States v. Favaloro,* 493 F.2d 623 (2nd Cir. 1974). The delay in bringing this case to trial, on the other hand, constitutes a nearly textbook example of bureaucratic inefficiency, which is clearly not a source of delay with which the drafters of the Speedy Trial Act were unfamiliar. In fact, one might surmise that such administrative foul-ups were one of the intended targets of the Act. Nevertheless, bureaucratic inefficiency is not a listed exception in the Act.

The holding of the majority panel decision effectively says to a prosecutor that any honest mistake which results in delay of trial will be excused. The result is to transform the Act into a set of advisory guidelines concerning time constraints on prosecutorial action, and to render the provision requiring dismissal of indictments a

nearly dead letter. The Speedy Trial Act is, in short, being emasculated and rendered meaningless by the majority panel decision and by this Court's decision on Appellant's Motion for Leave to File Motion for Rehearing.

Because the State failed to meet its burden of proof of showing an exception under Sec. 4 of Art. 32A.02, V.A.C.C.P., the judgment should be reversed, the indictment dismissed, and appellant discharged under the terms of Art. 28.061, V.A.C.C.P. To the overruling of appellant's motion for leave to file motion for rehearing, I respectfully dissent.

ROBERTS and CLINTON, JJ., join.