Michael Webb PAGE, Appellant,

v.

The STATE of Texas, Appellee.

No. A14–84–621–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

April 18, 1985.

Sharon Michaels, Houston, for appellant.

John B. Holmes, Dist. Atty., Lori B. Millberg, Asst. Dist. Atty., Houston, for appellee.

Before J. CURTISS BROWN, C.J., and SEARS and ELLIS, JJ.

## OPINION

SEARS, Justice.

This is an appeal from a conviction for murder. Appellant pled not guilty. A jury found him guilty and assessed punishment at twenty-five years in the Texas Department of Corrections. We find no error and affirm.

In his first ground of error appellant asserts the trial court erred in denying his Motion to Dismiss the indictment for failure to provide a speedy trial.

The trial docket sheet reflects a long and confusing list of resets. However, appellant and the state are basically in agreement as to the sequence of events prior to August 1, 1983. The complaint was filed on January 8, 1980, the indictment returned on January 31, 1980. Appellant was arrested in Oklahoma on December 10, 1982, and was in custody in Harris County on January 26, 1983. The state filed an announcement of ready on February 7, 1983. The parties appeared in court on February 9, 1983, and by agreement the case was reset for trial on four separate occasions, placing the case on the August 1, 1983, trial docket. On August 1, 1983, the state was in trial on a capital murder case so the case was reset again for September 26, 1983. Another series of three agreed resets placed the case on the April 9, 1984, trial docket. On April 9, 1984, appellant announced ready and the state asked the court to hold the case for a few days while it located a temporarily missing witness. On April 12 the state filed a Motion for Continuance to procure the missing witness, however the court failed to rule on the Motion. The following day, Friday, April 13, 1984, the state had located its witness and announced ready. The record is unclear as to why the case did not proceed to trial at that time. Instead, the case was reset to June 25, and the parties disagree as to whether or not it was an agreed reset. Appellant contends he wrote "state not ready" on the reset form, and the state recalls writing, "says defense," but no explanation was given at the hearing on the Motion to Dismiss. On June 21 the case was not on the court's docket but the parties executed a reset form which set the case for trial on September 10, 1984. Again, the parties disagree as to what was written on the form and no reason for the reset is determinable from the record. On that day both sides announced ready and appellant filed his Motion to Dismiss. The state claimed surprise, withdrew its announcement of ready for one day to obtain documents necessary to refute appellant's Speedy Trial claim. The jury was finally sworn in on September 11, 1984.

The Speedy Trial Act, Tex.Code Crim.Proc.Ann. art. 32A.02 (Vernon Supp. 1985), provides that in a felony case the court shall grant a motion to set aside an

indictment if the state is not ready for trial within 120 days of the date the indictment is filed. Appellant contends that the period of computation begins on August 1, 1983, the first time the appellant did not agree to any resets, and continues until the next reset date on September 26, 1983, a period of 57 days. The next period appellant contends should be counted against the state is the period from April 9, 1984, to June 25, 1984, another 77 days, because the state announced "hold" to procure a witness. Lastly, appellant asserts the period from June 21, 1984, to September 10, 1984, should be counted against the state because a reset form dated June 21 had the notation "State not ready, says Defense." This delay, according to appellant, brought the total number of days counted against the state to 206. Appellant cites *Jordan v. State*, 639 S.W.2d 477, 478 (Tex.Crim.App. 1982), which holds that the burden of proving an exclusion from the computation of time is on the state, a burden which appellant claims the state did not meet. However, appellant has applied this burden incorrectly. The state announced ready 59 days after the appellant's arrest, both parties agreeing that the time between the indictment and arrest is excluded from the computation because appellant's whereabouts were unknown, thus bringing the announcement within the statutory period. The state's announcement of ready *within* the statutory time period, coupled with testimony that it was ready at all times thereafter (subject to witness availability), establishes a prima facie case of compliance with the Speedy Trial Act. The burden is then on the appellant to show that the state was not ready within the time limit. *Barfield v. State*, 586 S.W.2d 538, 542 (Tex.Crim. App.1979). If the state announces ready at a time *not within* the applicable limits *and* does not say it was ready within the statutory time limit, then the burden is on the state to prove that certain times are excludable so as to bring the state within the time limit. *Ex parte Hilliard*, 687 S.W.2d 316 (Tex.Crim.App.1985). Here the uncontroverted announcement of ready by the state on February 7, 1983, tolled the running of the Act until the presumption of readiness was sufficiently rebutted by appellant or until the state announced not ready. *See Canada v. State*, 660 S.W.2d 528, 529 (Tex. Crim.App.1983) (en banc). The only times the state announced it was not ready were April 9, 1984, and September 10, 1984. The April 9 announcement was changed to ready on April 13 after the missing witness was found, and the September 10 withdrawal of ready was for one day only in order to gather documents to refute appellant's surprise announcement of a Speedy Trial Act violation. Appellant relies on reset forms to prove that he did not agree to the resets; however, the reset forms are not in the record before this court, and the docket sheet does not reveal why the case was reset so often. At the hearing on the Motion to Dismiss, the appellant elicited conflicting testimony from the docket clerk regarding the reasons for the resets, while the prosecuting attorney stated that he was ready to try the case ever since the initial announcement of ready was filed except for the five-day period to procure the missing witness. He also testified that he was surprised by the appellant's Speedy Trial allegation on September 10 because all along he and the appellant had agreed to the resets. We thus hold that appellant failed to rebut the state's prima facie showing of readiness and overrule the first ground of error.

In grounds of error two and three the appellant challenges the sufficiency of the evidence to refute the defensive theories of sudden passion, self-defense and defense of a third person.

On the evening of December 30, 1979, appellant and some of his friends went to the Last Roundup Bar to drink and play pool. Later in the evening the complainants, James and William Allsup, arrived at the bar. Around 11:30 p.m. the appellant and his friends left the bar and appellant backed his van into a ditch. When they couldn't get the van out of the ditch, the Allsups volunteered to help. James Allsup hooked a chain from his car to the van and

attempted to pull the van but the chain broke. They tied the chain together and successfully removed the van from the ditch, but then could not remove the chain from the van. They all returned to the bar to drink more beer and discuss the problem. While they were drinking in the bar, James Allsup's ex-wife Fanny, who had passed out in Allsup's car, awakened, joined the group in the bar, and angrily demanded that the chain be unhooked so that she could go home. She said if they didn't she would drive away with the van still hooked to the car. The group returned outside where James and the appellant tried unsuccessfully to remove the chain. In desperation James Allsup said he would get a shotgun from his car and blow the chain apart. At this point there is conflicting testimony as to the next sequence of events, but the atmosphere became unfriendly; appellant asked Linda Brewer for his pistol from her purse and he shot James Allsup, who was standing next to his car. William Allsup then ran towards the bar and was shot in the back by appellant. Appellant jerked the chain free and fled in his van. Both Allsups died.

Appellant's version of the incident includes claims that James Allsup not only threatened to shoot the chain in two but also to shoot appellant. He also testified that he told the Allsups they could take his van with them if they would first allow him to remove his son who was sleeping in the van. He claims the Allsups said he could not remove anything from the van. Finally, he testified that he asked Brewer for the pistol in order to hold it on the Allsups until his van was free, and shot James only because James dived into his car and, he thought, was reaching for a gun under the seat. He said he shot William as he ran for the bar because he thought William was running to get a gun and that he might come back or shoot appellant from the darkness.

Other testimony included that of the medical examiner who testified that the path of the bullets indicated James Allsup could not have been horizontal on the seat and reaching forward when hit. A chemist testified that James was shot from a distance of twelve to eighteen inches, and William from a distance in excess of three to four feet. The state's primary fact witness was Kenneth Blumerage, a juvenile, who was present the evening the Allsups were shot and witnessed the entire incident. He testified that prior to the shootings he heard no threats from either of the Allsups and saw no struggle. Robert Helton, a friend of appellant's who was with him that night, testified that he heard James say "I'll go get a gun and blow that goddamn thing in two and you, too, if you don't like it," but he was unable to hear any further conversation between the appellant and the Allsups. Linda Brewer testified that she heard James say he was going to shoot the chain in two, heard him tell William to get the gun, and heard appellant offer to let the Allsups take the van if he could first remove his son, which Allsup refused to do. She also testified that at this point appellant asked her for the gun in her purse and pointed it at James, and then she saw James dash towards his car. She heard shots but did not see what happened.

It is well-settled that when the sufficiency of the evidence is challenged, the evidence is to be viewed in the light most favorable to the verdict. The jurors are the exclusive judges of the facts, the credibility of the witnesses and the weight to be given their testimony. A jury is entitled to accept one version of the facts and reject another, or reject any part or all of a witness' testimony. *See Penagraph v. State*, 623 S.W.2d 341, 343 (Tex.Crim.App. 1981). There was sufficient evidence presented to enable the jury to believe Kenneth Blumerage's testimony over appellant's. The second and third grounds of error are overruled.

 In his fourth ground of error, appellant contends that the trial court erred in allowing the state to question a defense witness regarding appellant's failure to contact the authorities after the murder, and on whether appellant used alias names

while living in Oklahoma after the murders. The appellant asserts that the first questions relating to his failure to contact the authorities were comments on appellant's silence as a circumstance tending to establish his guilt. However, the authorities cited by appellant apply only to post-arrest silence. Since the questions asked of appellant were prior to his arrest, there was no error. Nor was there error in asking the second set of questions regarding the appellant's alleged use of alias names, as evidence of flight or avoidance of arrest is admissible on the issue of guilt. *Rumbaugh v. State*, 629 S.W.2d 747, 752 (Tex.Crim.App.1982) (en banc); *Edwards v. State*, 156 Tex.Crim. 146, 239 S.W.2d 618 (1951). The fourth ground of error is overruled and the conviction is affirmed.