Hector DE LA ROSA, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–81–00072–CR.

Court of Appeals of Texas, San Antonio.

Dec. 30, 1981.

Glen A. Bernard, Harlingen, for appellant.

Alger H. Kendall, Jr., Dist. Atty., Barry D. Brown, Asst. Dist. Atty., Karnes City, for appellee.

Before ESQUIVEL, BUTTS and CANTU, JJ.

OPINION

CANTU, Justice.

Appeal is taken from a conviction for possession of marihuana in an amount in excess of four ounces. Trial was to a jury with punishment being assessed at five years' confinement in the Texas Department of Corrections.

Initially appellant alleges that the trial court erred in failing to grant his Motion to Discharge under Tex.Code Crim.Pro.Ann. art. 28.061 (Vernon Supp. 1980–1981) and the "Speedy Trial Act." The record reflects that on October 30, 1978, appellant filed with the trial court an instrument designated "Motion For Discharge" which recited that appellant had been arrested on or about April 28, 1978, for the misdemeanor offense of driving while intoxicated[1] and the felony offense of possession of marihuana.[2]

The instrument further stated that the "Speedy Trial Act" had become effective on July 1, 1978, and that a misdemeanor for which the punishment exceeds 180 days must be tried within 90 days of the commencement of the criminal action, or having failed to do so, the court was bound to grant a motion to set aside. It further alleged that September 28, 1978, constituted the 90th day from and including July 1, 1978.

The motion further alleged that a "Motion to Discharge" concerning the misdemeanor offense of driving while intoxicated had been presented to the County Court of Karnes County and had been denied. The pleadings concluded that in the absence of some exception specified in the "Speedy Trial Act" the misdemeanor offense should have been dismissed, and because the offense of possession of marihuana over four ounces constituted an offense arising out of the same transaction, the State was barred from prosecuting him for the felony and the instant cause should be dismissed.

A hearing was had on appellant's Motion to Discharge the pending felony charge of possession of marihuana on October 30, 1978, the same day the motion was filed. At the hearing it was developed that appellant had been arrested on April 28, 1978, for the misdemeanor offense of driving while intoxicated and the case had been filed with the County Court of Karnes County, as Cause No. 8365. The evidence elicited also showed that appellant had been booked on the same day for felony possession of marihuana and had secured his release the following day by posting a $20,000.00 surety bond.

1. Article 6701*l*–1 Tex.Rev.Civ.Stat.Ann. (Vernon 1977) addressing the offense of driving while intoxicated provides in relevant part:
   Any person who drives or operates an automobile or any other motor vehicle upon any public road or highway in this State, or upon any street or alley within the limits of an incorporated city, town or village, while such person is intoxicated or under the influence of intoxicating liquor, shall be guilty of a misdemeanor and upon conviction shall be punished by confinement in the County jail

   for not less than three (3) days nor more than two (2) years . . . .

2. Possession of marihuana in an amount in excess of four ounces is a third degree felony with a prescribed penalty range from two to ten years' confinement in the State penitentiary, and a fine not to exceed $5,000.00. Art. 4476–15, § 4.05(a)(b)(1); Art. 4476–15, § 4.01 (b)(3); Tex.Rev.Civ.Stat.Ann. (Vernon Supp. 1980–1981).

The testimony reveals that nothing else occurred on the misdemeanor case until October 23, 1978, at which time appellant filed his Motion to Discharge alleging that more than 90 days had elapsed since the criminal action had commenced, that appellant had not yet been tried and that the misdemeanor should be dismissed under the provisions of the "Speedy Trial Act."

The Honorable B. A. Hartman, judge of the County Court of Karnes County, testified that the motion on the misdemeanor case had been presented to him and that he had denied it without dating it.[3]

Judge Hartman recalled the misdemeanor case being set for pretrial hearing sometime around May 17, 1978, but had no recollection of the case ever being set for trial. He admitted that the case was not yet set for trial and that he did not know why it had not been set.

The State then elicited evidence which showed that the misdemeanor case had been set for trial on the May 17, 1978, docket but had been taken off the docket when appellant requested a jury trial. It was further developed that a jury docket had been scheduled for September 27, 1978, consisting of some sixteen cases not including appellant's misdemeanor case.

Judge Hartman testified that there were between 100 and 150 cases pending on his court's jury docket and that his court did not have a regular court reporter assigned to it. He further opined that another jury docket would be set up within a month to six weeks and that appellant's case would be on the docket. Although Judge Hartman could not say that the State had ever announced ready in the misdemeanor case, he did not believe the State had ever announced not ready. The prosecutor (county attorney) then testified that the State had continually been ready to try the misdemeanor case since May 17, 1978.

Although appellant maintained his position that the case had never been reset for trial, and that he and the State, therefore, could not have appeared to answer, no attempt was made to discredit the State's contention of being continuously ready. The Motion to Discharge the felony case was denied and trial on the merits commenced the same day.

The record further reflects that a pretrial hearing was conducted in the instant cause on September 27, 1978, at which time appellant's motion to suppress was heard and overruled. No mention of a Motion to Discharge under the provisions of the "Speedy Trial Act" was raised at that time.

Appellant's assigned error arises out of the provisions of Tex.Code Crim.Pro.Ann. art. 28.061 (Vernon Supp.1980–1981) which provides:

> If a motion to set aside an indictment, information or complaint for failure to provide a speedy trial as required by Article 32A.02 is sustained, the court shall discharge the defendant. A discharge under this article is a bar to any further prosecution for the offense discharged or for any other offense arising out of the same transaction.

Appellant argues that even though the county court refused to set aside the information in the misdemeanor case under the "Speedy Trial Act," when he was entitled to have it discharged, the provisions of art. 28.061 should be beneficially applied to his felony cause so as to bar prosecution thereon. We disagree.

We first note that the Motion to Discharge in the instant case was not filed until October 30, 1978, some 122 days from the commencement of the "Speedy Trial Act"[4] the 120th day having fallen on a

---

3. Although the record does not reflect when the motion was overruled by the county court, appellant, in his brief, alleges that it was overruled on the same date of filing, October 23, 1978, without benefit of a hearing.

4. CHAPTER 32A, "Speedy Trial," was added by Act 1977, 65th Leg., p. 1970, ch. 787, § 1,

eff. July 1, 1978. Article 32A.02 Tex.Code Crim.Pro.Ann. (Vernon Supp. 1980 1981) reads in relevant part:

> A court shall grant a motion to set aside an indictment, information, or complaint if the State is not ready for trial within:

Saturday.[5] Appellant makes no contention that the felony case was not timely prosecuted but asserts only that the misdemeanor case was unduly delayed.

Similar contentions have been before the Court of Criminal Appeals on two occasions, but the court has declined to address the issue in the absence of properly developed facts. In *Clark v. State*, 590 S.W.2d 512 (Tex.Cr.App.1979), the defendant was charged with driving while intoxicated and "speeding." Both the complaint charging appellant with speeding and the information charging him with driving while intoxicated alleged that the offenses occurred on or about December 1, 1978. The defendant claimed that a dismissal of the speeding violation barred any further prosecution for the other offense since it arose out of the same transaction in light of art. 28.061, *supra*. Because no hearing was had on the Motion to Discharge, the Court of Criminal Appeals declined to hold the documents to be self-proving and concluded that there had been no showing that both offenses grew out of the same transaction.

In *McManners v. State*, 592 S.W.2d 622 (Tex.Cr.App.1980), the defendant was charged with driving while intoxicated, "speeding," "changing lanes" and "fleeing from a police officer." Dismissal of the latter three offenses prompted defendant to raise the same contention raised in *Clark v. State, supra*. The Court of Criminal Appeals again rejected the claim because no hearing had been requested in the trial court to establish that the origin of the offenses was from the same transaction. The pleadings were again held not to be self-proving.

> (1) 120 days of the commencement of a criminal action if the defendant is accused of a felony;
> (2) 90 days of the commencement of a criminal action if the defendant is accused of a misdemeanor punishable by a sentence of imprisonment for more than 180 days ....

5. We may judicially note that October 28, 1978, was a Saturday and that the first working day would have been Monday, October 30, 1978. *Burkham v. Ward*, 336 S.W.2d 452 (Tex.Civ. App.—Texarkana 1960, no writ); *Price v. State*, 157 Tex.Cr. 625, 252 S.W.2d 167 (1952).

In the instant case, a hearing was requested and held, and the evidence shows that both of the offenses, driving while intoxicated and possession of marihuana over four ounces, occurred on or about the same day. We will, therefore, consider whether the provisions of arts. 28.061 and 32A.02, *supra*, are applicable to the facts developed at the hearing.

Because the trial of the instant cause was held on the first working day following the 120th day, which fell on a Saturday, we will presume that trial was within the statutory period. Additionally, since no complaint was ever voiced regarding a speedy trial in the instant case until the very day the case was tried,[6] we conclude that appellant does not rely upon the Speedy Trial Act except derivatively, as raised by art. 28.061, *supra*, through the misdemeanor case.[7]

While it would be more expedient to hold that appellant may not rely upon art. 28.061 because he has not brought himself within the requisites of the statute, in that he has failed to obtain a dismissal of the underlying offense through the provisions of the "Speedy Trial Act," we decline to do so and elect to address the matter directly. We believe that to hold that appellant is foreclosed from raising the issue in the absence of a favorable ruling on the underlying offense would encourage trial courts to circumvent the intent of the legislature in enacting arts. 28.061 and 32A.02 and would render art. 28.061 meaningless by encouraging trial judges to overrule motions in all instances or to withhold rulings in all cases wherein several offenses arise out of the

6. We note that on September 7, 1978, immediately after the trial court overruled appellant's motion to suppress, the court advised appellant that the case was to be set for jury trial on October 30, 1978. Appellant neither voiced objection at the setting nor in any manner manifested his desire for an earlier setting.

7. Article 32A.02 § 3 provides:
The failure of a defendant to move for discharge under the provisions of this article prior to trial or the entry of a plea of guilty constitutes a waiver of the rights accorded by this article.

same transaction.[8] We are further convinced that in those cases, as in the case at bar, where a hearing record has been made and preserved for appellate review, and where the trial court in the underlying offense has either refused a ruling or has entered an unfavorable ruling, this court should, in the interest of judicial economy,[9] not hesitate to review the matter.

If appellant was entitled to a dismissal of the misdemeanor case by virtue of the "Speedy Trial Act" provisions, prosecution under the instant case would be barred by virtue of art. 28.061, if it be shown that both offenses arose out of the same transaction. We must, therefore, test the propriety of the County Court's refusal to set the misdemeanor information aside.

In *Wade v. State*, 572 S.W.2d 533 (Tex.Cr. App.1978), our Court of Criminal Appeals clarified that the time periods provided for in the "Speedy Trial Act" begin to run from the Act's effective date, July 1, 1978, for cases pending on that date. Consequently, even though appellant was originally arrested in both cases on April 28, 1978, with the misdemeanor information being filed on April 29, 1978, and the felony indictment being returned on June 19, 1978, the time periods for computation under the Act began to run on July 1, 1978, because both cases were already pending on that date.

■ The language of the "Speedy Trial Act" makes it clear that it is prosecutorial delay that triggers the right to release and not the judicial process as a whole. *Barfield v. State*, 586 S.W.2d 538 (Tex.Cr.App. 1979). The phrase "The State is not ready for trial" in the Act refers to the preparedness of the prosecution for trial and does not encompass the trial court and its docket. *Barfield v. State, supra.*

In interpreting sec. 3 of Tex.Code Crim. Pro.Ann. art. 32A.02 (Vernon Supp. 1980–1981), the Court of Criminal Appeals in *Barfield* reasoned that the statute requires that the first move be made by the accused rather than the State. If the accused does not do so, he waives his rights under the Act, and the State would not be required to show readiness in compliance with the Act's requirements. 586 S.W.2d, at 542.

■■ Once the defendant files his motion to dismiss for failure to adhere to the provisions of the Act, the State must declare its readiness for trial. This declaration is a prima facie showing of conformity to the Act, but can be rebutted by evidence submitted by the defendant demonstrating that the State was not ready for trial during the Act's time limits. This evidence can come from any source, including cross-examination of those responsible for preparing the State's case, and may consist of, among other things, a demonstration that the State did not have a key witness or piece of evidence available by the last day of the applicable time limit so that the State was not ready for trial within that time limit. 586 S.W.2d, at 542.

During the hearing on the Motion for Discharge in the instant case, the State secured the presence of the county attorney of Karnes County, who testified that he had been ready to try the misdemeanor case on May 17, 1978, the first trial setting date, *and that he had been ready to try the case ever since.* No attempt was made by appellant to cross-examine or impeach the witness on this claim nor was any evidence offered to rebut the statement of readiness. It remains before us unchallenged.

The rule has been announced that once the State announces ready and there is no challenge to the announcement to show otherwise by an accused, the reviewing court

---

8. See appendix to opinion consisting of the Court of Criminal Appeals' per curiam affirmance of appellant's misdemeanor conviction for a history of that case at the trial level. See also report of affirmance at 594 S.W.2d 454.

9. We can visualize situations in which a trial court, after erroneously denying a motion to dismiss on the underlying offense, would at the

request of the State, dismiss the case on other grounds, thereby precluding review of erroneous ruling. The net result would be the encouragement of post-conviction relief where review of the art. 28.061 claim was refused. The same result would occur if the underlying offense resulted in an acquittal.

will presume that the State was ready. *Fraire v. State*, 588 S.W.2d 789 (Tex.Cr. App.1979); *Ordunez v. Bean*, 579 S.W.2d 911 (Tex.Cr.App.1979).

█ Under the circumstances of the case at bar appellant was not entitled to a dismissal of his misdemeanor case.[10] Additionally, Tex.Code Crim.Pro.Ann. art. 32A.02 (Vernon Supp. 1980–1981) provides:

\* \* \* \* \* \*

§ 4. In computing the time by which the State must be ready for trial, the following periods shall be excluded:

\* \* \* \* \* \*

(10) any other reasonable period of delay that is justified by exceptional circumstances.

The testimony of Judge Hartman, in which he stated that his jury docket consisted of some 100 to 150 cases and that his court did not have a regular court reporter assigned to it, together with a showing that some effort to expedite jury cases had been made, we think, as did the trial court, constitutes exceptional circumstances so as to justify a delay. *Ordunez v. Bean, supra.*

September 28, 1978, constituted the 90th day for "Speedy Trial Act" purposes on the misdemeanor case. Appellant executed his Motion to Discharge in that case on September 29, 1978, but did not file it nor secure a hearing on it until October 23, 1978, one week before trial on the merits in the instant case. No evidence was presented to the trial court in the instant case concerning the testimony heard by the County Court when that court denied the Motion to Discharge on October 23, 1978.

Presumably, that motion was presented to the County Court without benefit of testimonial proof. The record before us leads to no other conclusion. The pleadings are not self-proving, and in the absence of some showing that the State was not ready to try the misdemeanor case we cannot assume that it was not, particularly in light of the testimony adduced at the hearing on

the Motion to Discharge in the instant case in which the State insisted it had been ready since May 17, 1978. The burden is upon appellant to develop a record substantiating his claims.

We hold that appellant has failed to demonstrate that he was derivatively entitled to discharge on his instant case by virtue of it being an offense arising out of a transaction also giving rise to a misdemeanor, the dismissal of which appellant claims he was improperly denied.

Appellant next contends that the trial court erred in overruling his objection to testimony regarding a second search of his vehicle and in admitting the fruits thereof into evidence. Appellant does not claim that the evidence complained of prejudiced his case on guilt or innocence, but maintains that the prejudice suffered at the hands of the jury is reflected by the five year sentence assessed for possession of almost 100 pounds of marihuana. We think the complaint to be without merit. Although the sufficiency of the evidence has not been challenged, a recitation of the facts is necessary in order to properly address this contention.

On April 28, 1978, at approximately 6:00 p. m., appellant, in the company of two co-defendants, was stopped on U. S. Highway 181 between the city of Kenedy and Karnes City in Karnes County. Appellant was stopped by Karnes County sheriff's deputy Danny Angel because his black 1972 Ford Ranchero had a defective taillight and was being driven in an erratic manner. Angel surmised that the driver of the vehicle was possibly driving while under the influence of alcohol.

When Angel approached appellant's vehicle, after both had stopped, appellant walked back toward Angel, and the officer detected a strong smell of intoxicants on appellant's breath as well as a strong odor of burning marihuana on appellant's hair. Angel decided to investigate the other two

---

10. This being so, we do not incur, in this case, the duty to interpret the statutory phrase "aris-

ing out of the same transaction."

occupants of the vehicle to determine if they too were intoxicated. As Angel approached the vehicle from the driver's side, his attention was drawn to the very strong odor of marihuana emanating from inside the vehicle. The passengers were asked to step out. As they did, Angel noticed what appeared to be marihuana seeds on the seat of the vehicle. He picked them up, examined them, and concluded that they were indeed marihuana seeds.

By pushing the seat forward, Angel found a compartment in the vehicle covered with cardboard. He removed the cardboard and retrieved 19 bricks of marihuana weighing in excess of 65 pounds. The occupants, including appellant, were all charged with felony possession of marihuana. Appellant was also booked for driving while intoxicated. The vehicle was towed to the Karnes County sheriff's office parking lot.

The next morning, Angel went out to the vehicle to obtain the vehicle identification number, in order to establish whether the vehicle was the same one for which the license plates had been issued. He was accompanied by the sheriff and one of the local justices of the peace. While Angel was viewing the vehicle identification number on the dashboard of the vehicle through the windshield, the sheriff, while standing by the tailgate of the vehicle, noticed something shiny through some bolt holes in the tailgate from which the bolts had been removed. Because the marihuana found in the vehicle earlier had been wrapped in tinfoil similar to that visible through the bolt holes, Angel concluded it was more marihuana.

A dismantling of the tailgate produced eight more marihuana bricks weighing in excess of 27 pounds. A thorough search of the vehicle led to the finding of one more brick under the hood of the vehicle. This final brick weighed over three pounds. Altogether, the marihuana weighed in excess of 96 pounds. Although a justice of the peace was available, no attempt was made to obtain a search warrant.

■ No contention is made that the vehicle was unlawfully impounded, but only that it was unlawfully searched while it was impounded. The State relies upon the "plain view" doctrine. It is now too clear to question that one may have a sufficient expectation of privacy in a vehicle so as to invoke the protection of the Fourth Amendment to the United States Constitution from unreasonable searches and seizures. *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977); *Preston v. United States*, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964); *Henry v. United States*, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); *Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). But what a person knowingly exposes to the public is not the subject of Fourth Amendment protection. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

■ Therefore, if a law enforcement officer is able, by the use of his natural senses, to discover what is inside a vehicle while standing in a place where he has a right to be, this discovery does not constitute a Fourth Amendment search. *Harris v. United States*, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968).

In *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564, (1971), the United States Supreme Court, in discussing the applicability of the "plain view" doctrine, stated,

Where the initial intrusion that brings the police within plain view of such an article is supported, not by a warrant, but by one of the recognized exceptions to the warrant requirement, the seizure is also legitimate. Thus the police may inadvertently come across evidence while in "hot pursuit" of a fleeing suspect. [Citations omitted]. And an object that comes into view during a search incident to arrest that is appropriately limited in scope under existing law may be seized without a warrant. [Citations omitted].

Finally, the "plain view" doctrine has been applied where a police officer is not searching for evidence against the accused, but nonetheless inadvertently

comes across an incriminating object. [Citations omitted].

What the "plain view" cases have in common is that the police officer in each of them had a prior justification for an intrusion in the course of which he came inadvertently across a piece of evidence incriminating the accused. The doctrine serves to supplement the prior justification—whether it be a warrant for another object, hot pursuit, search incident to lawful arrest, or some other legitimate reason for being present unconnected with a search directed against the accused—and permits the warrantless seizure. Of course, the extension of the original justification is legitimate only where it is immediately apparent to the police that they have evidence before them; the "plain view" doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges. 403 U.S., at 465–466, 91 S.Ct., at 2037–2038, 29 L.Ed.2d, at 582–583 [plurality opinion].

The court went on to qualify the doctrine by stating,

The limits on the doctrine are implicit in the statement of its rationale. The first of these is that plain view alone is never enough to justify the warrantless seizure of evidence. This is simply a corollary of the familiar principle discussed above, that no amount of probable cause can justify a warrantless search or seizure absent "exigent circumstances." Incontrovertible testimony of the senses that an incriminating object is on premises belonging to a criminal suspect may establish the fullest possible measure of probable cause. But even where the object is contraband, this court has repeatedly stated and enforced the basic rule that the police may not enter and make a warrantless seizure. [Citations omitted].

403 U.S., at 468, 91 S.Ct., at 2039, 29 L.Ed.2d, at 584 [plurality opinion].

The testimony is uncontroverted that appellant was in custody under a $20,000.00 bond and that the vehicle was impounded on the sheriff's property and was not going to be mobile within the foreseeable future. The record, in fact, discloses that even up through the day of trial the vehicle was still in the custody of the State.[11]

■ Although a magistrate was present, no attempt was made to secure a warrant for the seizure of the contraband nor any explanation given that would constitute "exigent circumstances." We note at this point that what was seen in the instant case was not the actual contraband so as to fully invoke the "plain view" doctrine but simply something "shiny" which, when taken together with other knowledge in the possession of the peace officer, gave him good reason to believe that what he had discovered was additional marihuana similarly wrapped.

We do not interpret the doctrine of "plain view" to permit a substitution of probable cause for the actual seeing of the contraband. We hold, therefore, that the State did not seize the additional marihuana pursuant to legal means and that admitting this evidence before the jury was erroneous.

There remains before us the question as to whether this admission of illegally obtained evidence constitutes reversible error. Appellant was charged with possession of marihuana over four ounces. The State was not required to prove any particular four ounces. In view of the amount of marihuana admitted into evidence from the initial valid seizure we cannot conclude that appellant was prejudiced by an additional thirty pounds.

■ Where it is claimed that the trial court has erred in admitting evidence

11. The record does not disclose the purpose of the lengthy detention, that is whether the vehicle was being held for evidentiary purposes or for an intended forfeiture. *See* Tex.Rev.Civ. Stat.Ann. art. 4476–15, §§ 5.03–5.08 (Vernon Supp. 1980–1981). Nor did the State ever establish an impoundment of the vehicle under a pre-existing departmental policy, so as to come within the rule of *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976).

obtained from an unreasonable search and seizure, the test to be applied is, "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *Fahy v. Connecticut*, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963). Stated differently, the United States Supreme Court in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), formulated the following test:

> . . . before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt.

*See also Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).

We cannot conclude, nor does appellant seriously contend otherwise, that there is a reasonable possibility that the evidence complained of contributed to appellant's conviction, nor are we persuaded by appellant's argument that at the very least it affected the jury's assessment of punishment. Under the circumstances, the jury was justified in concluding that appellant's possession was not for personal consumption. Furthermore, we think a term of five years is well within the penalty range and does not reflect jury overbearing or additional punishment considering the nature of the offense. We perceive the error to be harmless beyond a reasonable doubt. *Jackson v. State*, 548 S.W.2d 685 (Tex.Cr.App.1977); *Clay v. State*, 518 S.W.2d 550 (Tex.Cr.App.1975); *Bridger v. State*, 503 S.W.2d 801 (Tex.Cr.App.1974); *Holcomb v. State*, 484 S.W.2d 938 (Tex.Cr. App.1972).

In his final ground of error appellant claims that the trial court erred in sustaining the State's motion in limine prohibiting appellant from offering evidence concerning the punishment assessed his two co-defendants who had plead guilty and re-ceived four year probated sentences. Appellant argues that the jury should have been allowed to know that his co-defendants were granted probation for their complicity in the crime. He further assumes that this knowledge would have materially aided him in obtaining a term less than five years, or probation.

The contention is not supported by any authority nor do we believe any exists to support his position under the facts of this case.[12] We are told by bill of exception that his co-defendants plead guilty and received probation and we can surmise that punishment in those cases was arrived at through the plea-bargaining process. The record does not reveal the efforts, if any, made by appellant to plea bargain either together with his co-defendants or on his own. Having elected to exercise his statutory[13] right to have the same jury assess his punishment, he will not be heard to complain that the choice did not turn out as he anticipated. By electing to go with the jury on punishment, he gambled on receiving a lesser punishment than that assessed his co-defendants. Because the gamble did not pay off is not sufficient reason to disturb the jury verdict on punishment in the absence of some showing that his punishment was in some measure the product of prosecutorial or judicial vindictiveness, or that it was infected with any lack of due process. *Shepard v. United States, infra*, note 12.

Since neither of the co-defendants testified at the trial, the disposition of their charges never became admissible for any purpose. *Rodriguez v. State*, 552 S.W.2d 451 (Tex.Cr.App.1977). The rule has been repeatedly laid down that it is inadmissible to prove that another, jointly or separately indicted for the same offense, has been convicted or acquitted. *Adams v. State*, 531 S.W.2d 626 (Tex.Cr.App.1976); *Walker*

---

**12.** The problem of disparity in sentencing has received some measure of recognition. *See* S. Ruben, Disparity and Equality of Sentences—A Constitutional Challenge, 40 F.R.D. 55 (1967); and *Shepard v. United States*, 257 F.2d 293 (6th Cir. 1958), but neither of these deals with jury assessment of punishment in one case, con-trasted with punishment assessed co-defend-ants who have placed themselves at the mercy of the trial judge through the vehicle of plea bargaining.

**13.** Tex.Code Crim.Pro.Ann. art. 37.07 (Vernon 1981).

*v. State*, 530 S.W.2d 572 (Tex.Cr.App.1975); *Antwine v. State*, 486 S.W.2d 578 (Tex.Cr. App.1972); *Tucker v. State*, 461 S.W.2d 630 (Tex.Cr.App.1970). There appears to be no reason why proof of punishment in the one case should be admissible at the punishment phase of the co-defendants' trial. *Antwine v. State, supra.*

There being no error in the court's ruling on the State's motion in limine, this ground of error is overruled. The judgment of the trial court is, therefore, affirmed.

APPENDIX

HECTOR
| DE LA ROSA, | Appellant | Appeal |
| NO. 63,129 | Vs. | from |
| THE STATE OF | Appellee | KARNES County |
| TEXAS, | | |

Before ONION, P. J., and ODOM and W. C. DAVIS, JJ.

OPINION

PER CURIAM.

This is an appeal from a conviction for driving while intoxicated. Appellant waived jury trial and on March 1, 1979, entered a plea of guilty to the charge in the information. The trial court accepted that plea and adjudged appellant guilty, assessing punishment at three (3) days in jail and a $250.00 fine.

As reflected in the scant record on appeal, the chronology of events in the case at bar was as follows:

April 28, 1978 at 6 p. m.: Appellant was arrested for driving while intoxicated.

May 12, 1978: Appellant was notified by letter that Cause # 8365 was set for trial on Wednesday, May 17, 1978, at 10 a. m.

May 16, 1978: Counsel for appellant sent a letter to the county attorney, requesting a jury trial and acknowledging a setting for a pre-trial hearing for May 17.

July 1, 1978: The provisions of Article 32A.02, V.A.C.C.P., the Speedy Trial Act, became effective.

September 29, 1978: Appellant filed his first motion to discharge under the Speedy Trial Act, and it was denied.

October 30, 1978: Appellant filed another motion to discharge under the Speedy Trial Act, and it was denied on November 13, 1978.

December 20, 1978: Appellant filed a third motion to discharge under the Speedy Trial Act, and it was denied the same day.

February 28, 1979: Appellant filed a fourth motion to discharge under the Speedy Trial Act, and it was denied on March 1, 1979.

March 1, 1979: Appellant appeared, entered a guilty plea, punishment was assessed, and notice of appeal was given.

There is no statement of facts in the record on appeal. The docket sheet records appellant's name, offense, and date the information was filed (May 3, 1978) but is devoid of any proceedings or motions by either party in the cause, except for the two entries of March 1, 1979 (denying the motion to discharge, and the finding of guilty, assessment of punishment and notice of appeal).

Appellant's sole contention on appeal is that he was denied a speedy trial under Article 32A.02, V.A.C.C.P., the Speedy Trial Act.

Article 32A.02, § 3, V.A.C.C.P., states in pertinent part:

"... the entry of a plea of guilty constitutes a waiver of the rights accorded by this article."

*Ramirez v. State*, 590 S.W.2d 509 (Tex.Cr. App.1979), held that a plea of guilty waives the rights of the accused under the Act.

Appellant pleaded guilty. He waived his rights under the Speedy Trial Act. Nothing is presented for review.

The judgment is affirmed.