JOHNSON V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-043-CR

MARKUS JOHNSON APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 371ST DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Markus Johnson appeals his conviction for capital murder.  In five points, appellant complains that the trial court improperly denied his request to have the court rule on prospective jurors’ reasons for seeking to be excused from jury duty, refused to suppress appellant’s statement to police, admitted a 9-1-1 tape recording into evidence, refused to admit evidence about the lengths of appellant’s codefendants’ sentences, and overruled appellant’s request for mistrial after the State’s improper jury argument.  We affirm.

In his first point, appellant complains that the trial court erred by overruling his request to have the court, rather than the jury bailiff, evaluate and determine the propriety of prospective jurors’ reasons for seeking to be excused from jury duty. 

In Tarrant County, where appellant was tried, potential jurors report to the central jury room, where the jury bailiff appointed by the Tarrant County judges hears and decides their requests to be excused from jury service before assigning groups of potential jurors to a particular court.
(footnote: 2)  Appellant filed a motion for the trial court, rather than the jury bailiff, to hear and rule on those requests before the venire panel in his case was chosen.  The trial court denied the motion. 

Appellant contends that article 35.03 of the code of criminal procedure requires that, in a capital felony case such as his, the trial court judge, rather than a designee, must hear and determine the excuses offered for not serving as a juror.
(footnote: 3)  The court of criminal appeals has held, however, that article 35.03 does not require the trial court judge to rule on the excuses of potential jurors summoned to the central jury room who have not yet been assigned to a particular case.
(footnote: 4) Accordingly, we hold that the trial court did not err by overruling appellant’s motion.
(footnote: 5)  We overrule appellant’s first point.

In his second point, appellant asserts that the trial court improperly denied his motion to suppress his oral statement to police, in violation of article 38.22 of the code of criminal procedure.  Appellant contends that the statement is inadmissible because the police detective who took the statement had appellant read his 
Miranda
 rights rather than reading them to appellant and never expressly asked appellant if he waived those rights, and the voices on the tape recording are not identified. 

For a recorded oral statement that is the result of a custodial interrogation to be admissible, (1) the person making the statement must have been given his 
Miranda
 rights before the statement but during the recording and (2) must have knowingly, intelligently, and voluntarily waived those rights, and (3) all material voices on the recording must be identified.
(footnote: 6)  An express waiver of rights stated on the recording is not required if the recording reflects that the person understood his rights.
(footnote: 7)
 In this case, Detective Thomas Boetcher identified the three material voices on the tape as his, appellant’s, and  Detective Gibbs’s.  Appellant and Detective Boetcher did virtually all of the talking on the tape; Detective Gibbs only provided information about the name and location of the jail (in Oklahoma) where the tape-recorded statement was made.  The only other noises on the tape are in the background and are not pertinent to the tape-recorded conversation or statement.  Accordingly, all material voices are identified on the tape.

Further, before taking appellant’s oral statement, Detective Boetcher gave the written list of 
Miranda
 warnings to appellant, and appellant read each of those rights out loud during the tape recording.  Therefore, appellant was given his 
Miranda
 warnings.  Finally, after appellant had read the warnings, Detective Boetcher asked him on the tape recording, “do you want to tell me what happened that day?”  Appellant responded, “Yeah.”  Moreover, midway during the recording, appellant insisted that Detective Boetcher turn off the tape recorder so that appellant could ask a question off the record.  Thus, the recording shows that appellant understood his rights and chose to waive them.

Indeed, appellant testified at the suppression hearing that he had understood all of his rights at the time he read them during the tape recording. He simply complains that he thought he was being interviewed as a witness rather than as a suspect—even though he was under arrest and in jail when he made the statement.  As the sole trier of fact and judge of the witnesses’ credibility at the suppression hearing, the trial court was free to believe appellant’s testimony that he understood his rights and to disbelieve his testimony that he did not realize he was a suspect.
(footnote: 8)  Accordingly, we hold that the trial court did not err by overruling appellant’s motion to suppress his oral statement.
(footnote: 9)  We overrule appellant’s second point.

In his third point, appellant complains that the trial court improperly admitted into evidence a tape recording of a 9-1-1 call made by D’Shanee Filer, reporting the shooting.  Appellant contends that the tape recording is hearsay and does not satisfy any of the exceptions to the hearsay rule. 

The tape was, however, admissible under the excited utterance exception to the hearsay rule because Filer called 9-1-1 while she was under the stress of excitement caused by the shooting.
(footnote: 10)  Filer made the call less than five minutes after the victims were shot inside her home, during which time she fled to the garage with her young child, and the tape reflects that she was highly upset.  She had difficulty giving her name and continuously repeated herself and begged the police to hurry, and the 9-1-1 operator asked her several times to calm herself.  Therefore, we hold that the trial court did not abuse its discretion by admitting the tape.
(footnote: 11)  We overrule appellant’s third point.

In his fourth point, appellant complains that the trial court erroneously refused to allow him to put on evidence of the sentences that his three codefendants received.   Appellant argues that this evidence was admissible under the rule of optional completeness because the State elicited testimony that all of the codefendants had been arrested and indicted for capital murder. Appellant contends that he should have been allowed to dispel the false impression created by this testimony that each of his codefendants was convicted of capital murder. 

Generally, evidence regarding the disposition of a codefendant’s case is inadmissible.
(footnote: 12)  The rule of optional completeness,
(footnote: 13) however, permits the introduction of otherwise inadmissible evidence when that evidence is necessary to fully and fairly explain a matter “opened up” by the adverse party.
(footnote: 14)  The purpose of the rule is to reduce the possibility of the jury receiving a false impression from hearing only a part of an act, conversation, or writing.
(footnote: 15)
 In this case, there is no evidence that a false impression was created with regard to two of appellant’s codefendants, because the record does not show the outcomes of their cases.  Regarding the third codefendant, Donald Overton, appellant put on evidence outside the jury’s presence that Overton pleaded guilty to the lesser offense of murder in exchange for a fifty-five year sentence and an agreement to testify against one of the other codefendants. 

Assuming, for argument’s sake, that the trial court erred by excluding the evidence of Overton’s plea-bargain, we fail to see how the omitted evidence would have benefitted appellant or affected the jury’s determination of its verdict.
(footnote: 16)  Therefore, the error, if any, did not affect appellant’s substantial rights, and we will disregard it.
(footnote: 17)  We overrule appellant’s fourth point.

In his fifth point, appellant complains that the trial court erroneously overruled his request for a mistrial based on the State’s improper jury argument.

During closing arguments, the prosecutor argued:

Now, first of all, you can believe that he [appellant] did the actual killing.  You certainly can.  You can believe that he—he shot Reginald Hampton after shooting John Beckwith.  You can believe that.

I’ll tell you right now that I don’t believe that is the most likely thing that happened.  I believe this man is guilty as a party.  Okay?  There is evidence to suggest—

The trial court sustained appellant’s objection to the prosecutor’s statements of his beliefs and instructed the jury to disregard them, but denied the defense’s motion for a mistrial.  The prosecutor then continued, “That’s the most reasonable interpretation of the evidence.” 

When the trial court sustains an objection to improper argument and instructs the jury to disregard, a mistrial is required only in extreme circumstances—when the prejudice caused by the improper argument is incurable, i.e., “so prejudicial that expenditure of further time and expense would be wasteful and futile.”
(footnote: 18)  The prosecutor’s argument complained of here was not so extreme as to be incurable by the instruction to disregard.  Therefore, the trial court did not err by denying appellant’s motion for mistrial.  We overrule appellant’s fifth point.

Having overruled all of appellant’s points, we affirm the trial court’s judgment.

PER CURIAM

PANEL F: CAYCE, C.J.; HOLMAN and GARDNER, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  March 9, 2006

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
Some potential jurors also respond by mail that they are exempt from service.  A potential juror may establish his or her exemption without appearing in person, by simply filing a signed statement with the court clerk.  
Tex. Code Crim. Proc. Ann.
 art. 35.04 (Vernon 1989).

3:
See id.
 art. 35.03, § 2 (Vernon Supp. 2005).

4:
Chambers v. State,
 903 S.W.2d 21, 30 (Tex. Crim. App. 1995).

5:
See Wiley v. State,
 112 S.W.3d 173, 175 (Tex. App.—Fort Worth 2003, pet. ref’d) (stating that, as an intermediate appellate court, we are bound to follow the pronouncements of the court of criminal appeals).

6: 
See
 
Tex. Code Crim. Proc. Ann.
 art. 38.22, § 3(a), (e)  (Vernon 2005).

7:
Rocha v. State,
 16 S.W.3d 1, 12 (Tex. Crim. App. 2000); 
Etheridge v. State,
 903 S.W.2d 1, 16-17 (Tex. Crim. App. 1994), 
cert. denied,
 516 U.S. 920 (1995).

8:
See 
State v. Ross
, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); 
State v. Ballard
, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999).

9:
See Estrada v. State
, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005) (stating standard of review)
.

10:
See 
Tex. R. Evid.
 803(2);
 Lawton v. State,
 913 S.W.2d 542, 553 (Tex. Crim. App. 1995) (holding that the critical factor in determining when a statement is an excited utterance is whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event), 
cert. denied,
 519 U.S. 826 (1996), 
disavowed on other grounds, Mosley v. State,
 983 S.W.2d 249, 263 n.18 (1998).

11:
See Carrasco v. State,
 154 S.W.3d 127, 129 (Tex. Crim. App. 2005)
.

12:
Rodriquez v. State,
 552 S.W.2d 451, 456 (Tex. Crim. App. 1977); 
Montoya v. State,
 65 S.W.3d 111, 115 (Tex. App.—Amarillo 2000, no pet.); 
De La Rosa v. State,
 627 S.W.2d 207, 216-17 (Tex. App.—San Antonio 1981, no pet.).

13:
The rule of optional completeness is evidentiary rule 107, which provides in pertinent part that,

When part of an act . . . is given in evidence by one party, the whole on the same subject may be inquired into by the other, and any other act . . . which is necessary to make it fully understood or to explain the same may also be given in evidence[.]

Tex. R. Evid.
 107.

14:
West v. State,
 121 S.W.3d 95, 103 (Tex. App.—Fort Worth 2003, pet. ref’d).

15:
Roman v. State,
 503 S.W.2d 252, 253 (Tex. Crim. App. 1974) (applying predecessor to rule 107); 
Elmore v. State,
 116 S.W.3d 801, 807 (Tex. App.—Fort Worth 2003, pet. ref’d).

16:
See
 
King v. State
, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997).

17:
See
 
Tex. R. App. P.
 44.2(b).

18:
Hawkins v. State
, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004); 
see also Simpson v. State,
 119 S.W.3d 262, 272 (Tex. Crim. App. 2003), 
cert. denied,
 542 U.S. 905 (2004).