COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-05-043-CR

 

 

MARKUS JOHNSON                                                             APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

           FROM
THE 371ST DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

Markus Johnson appeals his
conviction for capital murder.  In five
points, appellant complains that the trial court improperly denied his request
to have the court rule on prospective jurors= reasons for seeking to be excused from jury duty, refused to suppress
appellant=s statement
to police, admitted a 9-1-1 tape recording into evidence, refused to admit
evidence about the lengths of appellant=s codefendants= sentences,
and overruled appellant=s request for
mistrial after the State=s improper
jury argument.  We affirm.








In his first point, appellant
complains that the trial court erred by overruling his request to have the
court, rather than the jury bailiff, evaluate and determine the propriety of
prospective jurors= reasons for
seeking to be excused from jury duty. 

In Tarrant County, where
appellant was tried, potential jurors report to the central jury room, where
the jury bailiff appointed by the Tarrant County judges hears and decides their
requests to be excused from jury service before assigning groups of potential
jurors to a particular court.[2]  Appellant filed a motion for the trial court,
rather than the jury bailiff, to hear and rule on those requests before the
venire panel in his case was chosen.  The
trial court denied the motion. 








Appellant contends that
article 35.03 of the code of criminal procedure requires that, in a capital
felony case such as his, the trial court judge, rather than a designee, must
hear and determine the excuses offered for not serving as a juror.[3]  The court of criminal appeals has held,
however, that article 35.03 does not require the trial court judge to rule on
the excuses of potential jurors summoned to the central jury room who have not
yet been assigned to a particular case.[4]
Accordingly, we hold that the trial court did not err by overruling appellant=s motion.[5]  We overrule appellant=s first point.

In his second point,
appellant asserts that the trial court improperly denied his motion to suppress
his oral statement to police, in violation of article 38.22 of the code of
criminal procedure.  Appellant contends
that the statement is inadmissible because the police detective who took the
statement had appellant read his Miranda rights rather than reading them
to appellant and never expressly asked appellant if he waived those rights, and
the voices on the tape recording are not identified. 








For a recorded oral statement
that is the result of a custodial interrogation to be admissible, (1) the
person making the statement must have been given his Miranda rights
before the statement but during the recording and (2) must have knowingly,
intelligently, and voluntarily waived those rights, and (3) all material voices
on the recording must be identified.[6]  An express waiver of rights stated on the
recording is not required if the recording reflects that the person understood
his rights.[7]

In this case, Detective
Thomas Boetcher identified the three material voices on the tape as his,
appellant=s, and  Detective Gibbs=s.  Appellant and Detective
Boetcher did virtually all of the talking on the tape; Detective Gibbs only
provided information about the name and location of the jail (in Oklahoma)
where the tape-recorded statement was made. 
The only other noises on the tape are in the background and are not
pertinent to the tape-recorded conversation or statement.  Accordingly, all material voices are
identified on the tape.








Further, before taking
appellant=s oral
statement, Detective Boetcher gave the written list of Miranda warnings
to appellant, and appellant read each of those rights out loud during the tape
recording.  Therefore, appellant was
given his Miranda warnings. 
Finally, after appellant had read the warnings, Detective Boetcher asked
him on the tape recording, Ado you want to tell me what happened that day?@  Appellant responded, AYeah.@  Moreover, midway during the recording,
appellant insisted that Detective Boetcher turn off the tape recorder so that
appellant could ask a question off the record. 
Thus, the recording shows that appellant understood his rights and chose
to waive them.

Indeed, appellant testified
at the suppression hearing that he had understood all of his rights at the time
he read them during the tape recording. He simply complains that he thought he
was being interviewed as a witness rather than as a suspectCeven though he was under arrest and in jail when he made the
statement.  As the sole trier of fact and
judge of the witnesses= credibility
at the suppression hearing, the trial court was free to believe appellant=s testimony that he understood his rights and to disbelieve his
testimony that he did not realize he was a suspect.[8]  Accordingly, we hold that the trial court did
not err by overruling appellant=s motion to suppress his oral statement.[9]  We overrule appellant=s second point.

In his third point, appellant
complains that the trial court improperly admitted into evidence a tape
recording of a 9-1-1 call made by D=Shanee Filer, reporting the shooting. 
Appellant contends that the tape recording is hearsay and does not
satisfy any of the exceptions to the hearsay rule. 








The tape was, however,
admissible under the excited utterance exception to the hearsay rule because
Filer called 9-1-1 while she was under the stress of excitement caused by the
shooting.[10]  Filer made the call less than five minutes
after the victims were shot inside her home, during which time she fled to the
garage with her young child, and the tape reflects that she was highly
upset.  She had difficulty giving her
name and continuously repeated herself and begged the police to hurry, and the
9-1-1 operator asked her several times to calm herself.  Therefore, we hold that the trial court did
not abuse its discretion by admitting the tape.[11]  We overrule appellant=s third point.








In his fourth point,
appellant complains that the trial court erroneously refused to allow him to
put on evidence of the sentences that his three codefendants received.   Appellant argues that this evidence was
admissible under the rule of optional completeness because the State elicited
testimony that all of the codefendants had been arrested and indicted for
capital murder. Appellant contends that he should have been allowed to dispel
the false impression created by this testimony that each of his codefendants
was convicted of capital murder. 

Generally, evidence regarding
the disposition of a codefendant=s case is inadmissible.[12]  The rule of optional completeness,[13]
however, permits the introduction of otherwise inadmissible evidence when that
evidence is necessary to fully and fairly explain a matter Aopened up@ by the
adverse party.[14]  The purpose of the rule is to reduce the
possibility of the jury receiving a false impression from hearing only a part
of an act, conversation, or writing.[15]








In this case, there is no
evidence that a false impression was created with regard to two of appellant=s codefendants, because the record does not show the outcomes of their
cases.  Regarding the third codefendant,
Donald Overton, appellant put on evidence outside the jury=s presence that Overton pleaded guilty to the lesser offense of murder
in exchange for a fifty-five year sentence and an agreement to testify against
one of the other codefendants. 

Assuming, for argument=s sake, that the trial court erred by excluding the evidence of
Overton=s plea-bargain, we fail to see how the omitted evidence would have
benefitted appellant or affected the jury=s determination of its verdict.[16]  Therefore, the error, if any, did not affect
appellant=s
substantial rights, and we will disregard it.[17]  We overrule appellant=s fourth point.

In his fifth point, appellant
complains that the trial court erroneously overruled his request for a mistrial
based on the State=s improper
jury argument.

During closing arguments, the
prosecutor argued:

Now, first of all, you can believe that he
[appellant] did the actual killing.  You
certainly can.  You can believe that heChe
shot Reginald Hampton after shooting John Beckwith.  You can believe that.

 

I=ll tell you right now that I
don=t
believe that is the most likely thing that happened.  I believe this man is guilty as a party.  Okay? 
There is evidence to suggestC

 








The trial court sustained
appellant=s objection
to the prosecutor=s statements
of his beliefs and instructed the jury to disregard them, but denied the
defense=s motion for a mistrial.  The
prosecutor then continued, AThat=s the most
reasonable interpretation of the evidence.@ 

When the trial court sustains an objection to improper
argument and instructs the jury to disregard, a mistrial is required only in
extreme circumstancesCwhen the prejudice caused by the improper
argument is incurable, i.e., Aso prejudicial
that expenditure of further time and expense would be wasteful and futile.@[18]  The prosecutor=s argument complained of here was not so extreme as to be incurable by
the instruction to disregard.  Therefore,
the trial court did not err by denying appellant=s motion for mistrial.  We
overrule appellant=s fifth
point.

Having overruled all of
appellant=s points, we
affirm the trial court=s judgment.

 

PER CURIAM

PANEL F:    CAYCE,
C.J.; HOLMAN and GARDNER, JJ.

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  March 9, 2006

 











[1]See Tex. R. App. P. 47.4.





[2]Some
potential jurors also respond by mail that they are exempt from service.  A potential juror may establish his or her
exemption without appearing in person, by simply filing a signed statement with
the court clerk.  Tex. Code Crim. Proc. Ann. art. 35.04 (Vernon 1989).





[3]See
id. art. 35.03, ' 2
(Vernon Supp. 2005).





[4]Chambers
v. State, 903 S.W.2d 21, 30 (Tex. Crim. App. 1995).





[5]See
Wiley v. State, 112 S.W.3d 173, 175 (Tex. App.CFort
Worth 2003, pet. ref=d)
(stating that, as an intermediate appellate court, we are bound to follow the
pronouncements of the court of criminal appeals).





[6] See
Tex. Code Crim. Proc. Ann. art.
38.22, '
3(a), (e)  (Vernon 2005).





[7]Rocha
v. State, 16 S.W.3d 1, 12 (Tex. Crim. App. 2000); Etheridge
v. State, 903 S.W.2d 1, 16-17 (Tex. Crim. App. 1994), cert. denied,
516 U.S. 920 (1995).





[8]See
State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); State
v. Ballard, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999).





[9]See
Estrada v. State, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005)
(stating standard of review).





[10]See Tex. R. Evid. 803(2); Lawton v. State,
913 S.W.2d 542, 553 (Tex. Crim. App. 1995) (holding that the critical factor in
determining when a statement is an excited utterance is whether the declarant
was still dominated by the emotions, excitement, fear, or pain of the event), cert.
denied, 519 U.S. 826 (1996), disavowed on other grounds, Mosley v.
State, 983 S.W.2d 249, 263 n.18 (1998).





[11]See
Carrasco v. State, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005).





[12]Rodriquez
v. State, 552 S.W.2d 451, 456 (Tex. Crim. App. 1977); Montoya
v. State, 65 S.W.3d 111, 115 (Tex. App.CAmarillo 2000, no pet.); De
La Rosa v. State, 627 S.W.2d 207, 216-17 (Tex. App.CSan
Antonio 1981, no pet.).





[13]The
rule of optional completeness is evidentiary rule 107, which provides in
pertinent part that,

 

When
part of an act . . . is given in evidence by one party, the whole on the same
subject may be inquired into by the other, and any other act . . . which is
necessary to make it fully understood or to explain the same may also be given
in evidence[.]

 

Tex. R. Evid. 107.





[14]West
v. State, 121 S.W.3d 95, 103 (Tex. App.CFort
Worth 2003, pet. ref=d).





[15]Roman
v. State, 503 S.W.2d 252, 253 (Tex. Crim. App. 1974)
(applying predecessor to rule 107); Elmore v. State, 116 S.W.3d 801, 807
(Tex. App.CFort
Worth 2003, pet. ref=d).





[16]See King
v. State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997).





[17]See Tex. R. App. P. 44.2(b).





[18]Hawkins v. State, 135 S.W.3d 72, 77 (Tex. Crim.
App. 2004); see also Simpson v. State, 119 S.W.3d 262, 272 (Tex. Crim.
App. 2003), cert. denied, 542 U.S. 905 (2004).